LAWYERS TITLE INSURANCE CORPORATION *v.* FRED J. CAPP

[No. 2-676A209A. Filed November 23, 1977. Rehearing denied January 9, 1978. Transfer denied April 18, 1978.]

*James M. Secrest, Hilgedag, Johnson, Secrest & Murphy*, of Indianapolis, for appellant.

*Robert A. Claycombe, Kothe, Shotwell, Claycombe, Hendrickson & Kortepeter*, of Indianapolis, for appellee.

LYBROOK, J.—Lawyers Title Insurance Corporation (Lawyers), plaintiff-appellant, brings this appeal following a trial to the court which resulted in a judgment in favor of Fred J. Capp, defendant-appellee.[1]

The facts most relevant to this appeal indicate that Capp and Columbia Properties, Inc. (Columbia) entered into a contract for the sale of a tract of land previously owned by Capp. The contract terms called for a price of $5,000 per acre to be paid to Capp. The acreage was to be based on a survey by a registered surveyor, John B. Schneider, who surveyed the tract at Columbia's request. Following that survey Capp executed a Warranty Deed to Columbia on July 19, 1972, purportedly conveying 76.638 acres and in exchange received $383,190 from Columbia. The survey was erroneous in that it had included a 45 foot strip of land which Capp had previously conveyed to Indianapolis Power & Light Company as part of another transaction. This resulted in an "overpayment" of $6,900 by Columbia to Capp since the tract contained 1.38 acres less than originally computed.

Lawyers was the title insurer for the Columbia-Capp transaction. Lawyers' initial commitment for title insurance was issued on June 16, 1972, and contained the following as an exception to the title insurance coverage:

"Also, except 45 feet by parallel lines off the west side thereof, part of that tract deeded to the Indianapolis, Power & Light Company by deed recorded as Instrument No. 70-55750."

This describes the area of land which is the subject of this controversy and which had previously been conveyed by Capp.

---

1. This case was transferred to this office in order to alleviate the disparity in caseloads among the districts.

A second and revised commitment for title insurance was issued on July 18, 1972. No mention was made of the above exception in the amended commitment. The following day, July 19, 1972, Capp executed the Warranty Deed to Columbia. Lawyers informed Capp of the problem approximately three months after the deed was executed and delivered, and requested that he reimburse Columbia for the overpayment. Columbia made no request or demand for repayment from Capp. Lawyers eventually paid Columbia $6,900 and instituted this action against Capp to obtain the alleged overpayment.

Upon the above facts, Lawyers presents the following issues for our review:

(1) Is Lawyers subrogated to the rights of Columbia?

(2) Is Capp liable for the overpayment as a matter of law?

(3) Should the judgment be reversed on the basis of mutual mistake?

Prior to any discussion of the merits of this case, we restate the appropriate standard of review to be applied in appeals from negative judgments. The appellant has the burden of demonstrating that the decision of the trial court is contrary to law. The evidence at trial must be without conflict and lead to but one conclusion and the trier of fact has reached the opposite conclusion before the judgment may be reversed as being contrary to law. *Chicago South Shore & South Bend Railroad v. Brown* (1974), 162 Ind. App. 493, 320 N.E.2d 809. That same standard of review will be applied to proceedings in equity as well as those at law. *Hays v. Hartfield L-P Gas* (1974), 159 Ind. App. 297, 306 N.E.2d 373.

With the above standards in mind we now proceed to a discussion of the issues.

I.

The first issue which we must resolve concerns the existence of a right of subrogation which Lawyers might have against Capp.

Lawyers' asserted right of subrogation must originate from either the policy of insurance, or from the operation of the equitable doctrine of subrogation (substitution). Lawyers has failed to include the policy of insurance in the record, and we may therefore look only to the equitable basis of their asserted subrogation, as we are unable to construe documents which are not before us.

Neither party has presented controlling precedents for our consideration, and this court can find none applicable to the most unusual factual setting of this case.

Lawyers contends that, as an insurer who has paid for the damages or debt of a third party, it is entitled to step into the shoes of its insured as it would in any normal subrogation case. In so contending Lawyers cites Indiana authorities supporting the equitable doctrine of subrogation and contends that no distinction exists between title insurance and other forms of indemnity agreements. We must disagree, but we limit our holding to the unusual factual setting of this particular case.

A search for precedents from other jurisdictions has failed to reveal any cases which are factually identical. However, the Supreme Court of Washington expressed its position, with which we agree, in the following manner:

> "Subrogation is a consequence which equity attaches to certain conditions. It is not an absolute right, but one which depends upon the equities and attending facts and circumstances of each case.

> It would be a gross misapplication of the doctrine of subrogation were we to hold that its cloak settles automatically upon one who has simply made a mistake, when it is a commercial transaction involving a consideration. Intervenor's relationship is governed by the law of contracts. Further, it is difficult to think of a situation in which a title insurance company could not claim unjust enrichment as to someone who might inadvertently benefit by their negligence. Either they insure or they don't. It is not the province of the court to relieve a title insurance company of its contractual obligation." *Coy v. Raabe* (1966), 69 Wash. 2d 346, 418 P.2d 728.

Our holding is further bolstered by, and limited to, the following facts:

(1) The title insurance policy here involved is basically a tripartite agreement involving vendor, vendee and insurer.

(2) Capp paid the consideration for the policy of title insurance.

(3) Lawyers had actual knowledge of the overlap and had originally excepted that land from coverage under its commitment.

(4) Capp paid and relied on Lawyers to search the record and provide an accurate legal description, which Lawyers failed to do.

(5) Since Lawyers had excepted the overlap from its original commitment, failed to except it from the amended commitment, and offered no explanation, it is safe to assume that the error was Lawyers' mistake.

(6) The policy of insurance and exceptions thereto were not made a part of the record.

(7) Since a potential cause of action in tort existed in favor of Columbia and against Lawyers,[1] the trial court may have interpreted Lawyers' payment of funds to be a settlement under the tort theory.

In light of the conflicting equities and above enumerated possibilities we are unable to hold that the evidence is without conflict and leads to but one conclusion and that the trier of fact reached the opposite conclusion. We are thus unable to reverse the holding of the trial court as being contrary to law. *Chicago & South Shore, supra.*

## II & III

Having found that we are unable to reverse the trial court's decision, based upon our reasoning above, we find it unnecessary to discuss the remaining issues.

---

1. *Mayhew, Huston v. Deister* (1969), 144 Ind. App. 111, 244 N.E.2d 448; and *Brown v. Sims* (1899), 22 Ind. App. 317, 53 N.E. 779, both suggest a duty of care and a potential tortious cause of action for negligence on the part of one examining an abstract and preparing an opinion therefrom which is to be relied on by others not in privity with the examiner. See also *Contini v. Western Title Insurance Company* (1974), 40 Cal. App.3d 536, 115 Cal. Rptr. 257; and 66 Yale L.J. 492 (1957).

We therefore affirm the holding of the trial court. Our decision is not meant to exclude the possibility of equitable subrogation involving title insurance in a factual setting different from the most unusual circumstances in the case at bar.

Affirmed.

Robertson, C.J. and Lowdermilk, J. concur.

NOTE—Reported at 369 N.E.2d 672.