373 N.E.2d 331 (1978)
Donna WILSON, Appellant,
v.
REVIEW BOARD OF THE INDIANA EMPLOYMENT SECURITY DIVISION, Steak 'n Shake, Indiana Employment Security Board, Max Wright, Richard Ristine, Glenn Ray, Dr., William H. Andrews, Jr., George Elrod, John F. Coppes, David Brown, Mary Aikens Currie, William Davis, and Leslie Harris, Appellees.
No. 2-677A228.
Court of Appeals of Indiana, First District.
March 7, 1978.
Rehearing Denied May 1, 1978.
*332 David F. Shadel, Legal Services Organization, Indianapolis, for appellant.
*333 Theo. L. Sendak, Atty. Gen., Darrell K. Diamond, Deputy Atty. Gen., Indianapolis, for appellees.
LOWDERMILK, Judge.

OPINION GRANTING PETITIONS FOR REHEARING
Our prior opinion was filed November 23, 1977, and appears in 369 N.E.2d 675. Both the State and Donna Wilson have petitioned for rehearing. We have carefully reexamined the record in light of facts and arguments emphasized in those petitions and accompanying briefs. We also have reexamined the briefs filed initially by the parties and the authorities cited therein. Having done so, we conclude that our prior opinion must be set aside. Accordingly, the petitions for rehearing filed by the Review Board and by Wilson are hereby granted. Our opinion of November 23, 1977, and the decision expressed therein, are hereby vacated.

STATEMENT OF THE CASE
Donna Wilson (Wilson) seeks review of a decision of the Review Board affirming a referee's denial of unemployment compensation benefits. Wilson also appeals from an order of the Marion County Circuit Court dismissing an amended complaint she had filed against the Indiana Employment Security Division (the Division) and numerous other parties. This court granted Wilson's motion for consolidation of these two matters.

STATEMENT OF THE FACTS
Donna Wilson worked as a waitress at Steak 'N Shake restaurant (restaurant) on Pendleton Pike in Indianapolis. Her employment terminated November 12, 1976, when she left work early, complaining of illness, despite instructions that she should remain until the end of her scheduled work shift.
Wilson filed a claim for unemployment compensation benefits. On or about December 12, 1976, Wilson returned to the restaurant to inquire concerning a check due for past services. While Wilson was at the restaurant, the restaurant manager, in the presence of the district manager, offered twice to reinstate Wilson in the same job she held previously. She refused both offers. Wilson stated that she did not want to work under the supervision of the head waitress who had refused Wilson's request to leave early on November 12, 1976.
The following events are relevant to the issues raised herein:

 In the In the
trial court Division
 11/15/76 Wilson filed her initial claim for benefits.
 12/2/76 The Division recognized Wilson's status as
 an insured worker.
 12/14/76 Wilson's former employer submitted a report
 indicating that Wilson had refused an offer
 of suitable work without good cause.
 1/5/77 A deputy of the Division gave Wilson written
 notice that Wilson's benefit rights were
 suspended commencing the week ending December
 18, 1976.
1/6/77 Wilson filed her verified complaint for
 declaratory judgment and injunctive relief.
 1/17/77 Wilson filed her request for a hearing before
 a referee.
 1/26/77 Wilson filed a motion for immediate order to
 resume payment of benefits, for recognition
 of her appeal as a class action, and for
 adoption of rule and policy.
 1/26/77 The referee denied Wilson's motion.
 2/1/77 Wilson filed her request for appeal to the
 Review Board, listing the denial of her
 motion as the point in dispute.
 2/9/77 Wilson received a hearing before a referee.

*334
 2/15/77 The referee ruled that restaurant made a
 good-faith offer of suitable work and Wilson
 refused that offer without good cause;
 therefore, the deputy properly suspended
 Wilson's benefits.
 2/22/77 Wilson filed her request for appeal to the
 Review Board.
3/4/77 The trial court granted defendants' motion to
 dismiss.
3/17/77 Wilson filed an amended complaint for
 declaratory judgment and injunctive relief.
3/22/77 The trial court granted defendants' motion to
 dismiss the amended complaint.[1]
4/6/77 The trial court entered judgment of dismissal.
 4/12/77 The Review Board heard oral argument on the
 record of the hearing before the referee.
 4/14/77 The Review Board affirmed the decision of the
 referee.

ISSUES
1. Whether the decision of the Review Board is contrary to law and not supported by the evidence.
2. Whether the Indiana Employment Security Division erred in failing to allow Wilson to proceed with her administrative appeal as a class action administrative appeal.
3. Whether the trial court had jurisdiction of Wilson's amended complaint.
4. Whether Wilson's amended complaint stated a claim upon which relief could be granted.
5. Whether the Indiana Employment Security Division erred in failing to find that Wilson's rights to unemployment compensation benefits were violated by the suspension of her benefit rights without first providing her with notice and opportunity for a fair hearing.
6. Whether the Indiana Employment Security Division erred in refusing to adopt the rule, regulation, policy or practice sought by Wilson.

Issue One
Wilson argues that the restaurant made no genuine offer of suitable work.
This court may not weigh the evidence when it reviews a decision of the Review Board. The Review Board's decision as to all questions of fact is conclusive. Skirvin v. Review Board (1976), Ind. App., 355 N.E.2d 425.
Wilson's argument goes solely to weight of the evidence and credibility of witnesses. The record provides evidence of probative value to support the Review Board's conclusion that Wilson refused an offer of suitable work without good cause.[2]

Issue Two
Wilson argues that the Indiana Employment Security Division erred in failing to allow Wilson to proceed with her administrative appeal as a class action administrative appeal. Wilson contends that, (1) because the referee has considerable discretion in the conduct of hearings, and (2) because no statute prohibits class action administrative appeals, the appeal should have been recognized as a class action. The Division responds that no authorization for such a procedure exists.
An administrative agency is a creature of the Legislature. The procedures to be followed in an administrative proceeding are defined in the statutes pertaining to the particular agency. Clary v. National Friction Products, Inc. (1972), 259 Ind. 581, 290 N.E.2d 53.
*335 Wilson contends that the administrative agency had "apparent authority" to do what she requested. An administrative agency has only the powers and authority specifically provided it. Wilson errs when she searches for a statute prohibiting a particular procedure; she must search instead for authorization for such a procedure. The Division did not err in refusing to allow Wilson to proceed with her administrative appeal as a class action administrative appeal.

Issue Three
Wilson argues that the trial court had jurisdiction of Wilson's amended complaint. She emphasizes that in the trial court she did not seek to challenge the ruling on her claim for benefits but rather she did seek to challenge the procedure employed by the Indiana Employment Security Division in suspending and terminating benefits.
The Division responds that the Indiana Employment Security Act provides a comprehensive administrative procedure for determination of eligibility for benefits. The Review Board's decision ultimately may be reviewed by the Court of Appeals. The Division argues that the jurisdiction of the Court of Appeals is exclusive and the trial court has no jurisdiction to entertain Wilson's amended complaint.
A failure to pursue statutory remedies is jurisdictional and may be raised by a motion to dismiss. Bryant v. Lake County Trust Co. (1972), 152 Ind. App. 628, 284 N.E.2d 537.
IC 1971, XX-X-XX-XX (Burns Code Ed.) provides that either party to the dispute, the Indiana Employment Security Board, or the Director of the Division may appeal the decision of the Review Board to the Court of Appeals. Ind.Rules of Appellate Procedure, Appellate Rule 4(C) states that the Court of Appeals shall have jurisdiction to review final decisions of the Review Board of the Employment Security Division.
The Indiana Employment Security Division is administered by the Indiana Employment Security Board. IC 1971, XX-X-XX-X (Burns Code Ed.). The Indiana Employment Security Board consists of five members appointed by the governor. IC 1971, XX-X-XX-X (Burns Code Ed.). The governor also appoints a Director of the Division, who serves as the executive and administrative officer of the Division and as Secretary of the Indiana Employment Security Board. IC 1971, XX-X-XX-X (Burns Code Ed.). The Indiana Employment Security Board has the power and authority to administer the provisions of the Indiana Employment Security Act and to adopt, amend, or rescind rules and regulations. IC 1971, XX-X-XX-X (Burns Code Ed.). Claims for benefits must be made in accordance with the regulations and procedures prescribed by the Indiana Employment Security Board. IC 1971, XX-X-XX-X (Burns Code Ed.).
The Review Board is composed of three persons appointed by the governor. The Review Board makes determinations concerning claims submitted to the Indiana Employment Security Division by claimants seeking unemployment compensation benefits. IC 1971, XX-X-XX-X (Burns Code Ed.).
When Wilson filed her amended complaint, she named the following parties as defendants therein: (1) the Indiana Employment Security Division, (2) the Indiana Employment Security Board, (3) the individual members of the Indiana Employment Security Board, (4) the Director of the Indiana Employment Security Division, (5) the Assistant Chief of Benefit Administration for the Indiana Employment Security Division, (6) the Auditor of the State of Indiana, (7) the Chief of Benefit Administration for the Indiana Employment Security Division, and (8) a Claims Deputy of the Indiana Employment Security Division. Wilson did not name the Review Board or the individual members of the Review Board as parties. Wilson did not challenge a final decision of the Review Board. Instead, she challenged procedures employed by the Indiana Employment Security Division. The Indiana Employment Security Board, not the Review Board, prescribes the procedures employed by the Indiana Employment Security Division. IC 1971, XX-X-XX-X, supra.
*336 The Division cites cases which stand for the proposition that when an administrative procedure is established by statute, that procedure is the exclusive manner in which claims or disputes may be heard.
The Division cites IC 1971, XX-X-XX-XX, supra, which gives the Court of Appeals jurisdiction of an appeal from a decision of the Review Board. However, the Division makes no mention of the facts that (1) the Review Board was not named as a party to the trial court action, (2) no final decision of the Review Board as to the payment of benefits was challenged in the trial court action, and (3) the Review Board was not responsible for the procedures challenged in the trial court action.
In her amended complaint Wilson alleged, inter alia, that the suspension and termination procedure employed by the Indiana Employment Security Division had resulted in a violation of her constitutional right to due process. She sought injunctive relief and a declaratory judgment. The Division maintained steadfastly that its suspension and termination procedure complied with a proper statutory scheme. The Division cites no statute which empowers the Review Board to rule upon the issues presented by Wilson in the trial court action. The Division cites no statute which provides Wilson an administrative procedure to accomplish that which she sought to accomplish in the trial court.
We hold that no administrative agency provided Wilson a remedy for the harm she alleged in the trial court action. We further hold that the trial court did possess jurisdiction to entertain Wilson's amended complaint.

Issues Four, Five, and Six
Wilson argues that her amended complaint stated a claim upon which relief could be granted, for she alleged in her amended complaint that the suspension and termination procedure employed by the Indiana Employment Security Division violated rights provided her by federal and state constitutions and federal and state laws. The Division contends that its procedure was proper and therefore Wilson's amended complaint stated no claim upon which relief could be granted.
Wilson argues that the Indiana Employment Security Division violated her constitutional right to due process[3] and due course of law[4] when it suspended her unemployment compensation benefit rights without notice or opportunity for fair hearing. The Division responds that no due process problem exists "since the due process standards for a new determination [as to eligibility] are different from the standards for termination of a preexisting right." (Our insert)
First we consider the relevant statutes. When an individual files an initial claim, the Division must promptly determine the claimant's status as an insured worker. IC 1971, XX-X-XX-X(a) (Burns Supp. 1977).
After a claimant is recognized as an insured worker, a deputy makes a determination, for each week in which the insured worker claims waiting period credit or benefit rights, as to whether or not the insured worker is eligible for waiting period credit or benefits for that particular week. In the alternative, the deputy may refer the claim to a referee who makes the determination after holding a hearing. IC 1971, XX-X-XX-X(d) (Burns Supp. 1977).
IC 1971, XX-X-XX-X(e) (Burns Supp. 1977) provides, in part, as follows:
"(e) In cases where the claimant's benefit eligibility or disqualification is disputed, *337 the division shall promptly notify the claimant and the employer or employers directly involved or connected with the issue raised as to the validity of such claim, the eligibility of the claimant for waiting period credit or benefits, or the imposition of a disqualification period or penalty, or the denial thereof, and of the cause for which the claimant left his work, of such determination and the reasons thereof. Except as otherwise hereinafter provided in this subsection regarding parties located in Alaska, Hawaii and Puerto Rico, unless the claimant or such employer within twenty [20] days after such notification was mailed to his or its last known address, or otherwise delivered to him or it, asks a hearing before a referee thereon, such decision shall be final and benefits shall be paid or denied in accordance therewith... .
In the event a hearing is requested by an employer or the division after it has been administratively determined that benefits should be allowed to a claimant, entitled benefits shall continue to be paid to said claimant unless said administrative determination has been reversed by a due process hearing. Benefits with respect to any week not in dispute shall be paid promptly regardless of any appeal."[5]
Next we summarize the material facts. The Division recognized Wilson's status as an insured worker on December 2, 1976. She first received benefits for the week ending November 27, 1976. On December 14, 1976, Wilson's former employer submitted to the Division a report[6] indicating that Wilson had refused an offer of suitable work.[7] On January 4, 1977, Wilson appeared at the local office to file her weekly claim. The deputy informed her that her benefits were being suspended immediately because of her refusal of the offer of suitable work. On January 5, 1977, the deputy mailed Wilson written notice informing her that her benefit rights were suspended effective the week ending December 18, 1976. On January 17, 1977, Wilson filed her request for a hearing before a referee, and that hearing took place February 9, 1977.
The Division contends that the weekly determination made by the deputy is an original determination; benefits can be denied as a result of such determination and that denial is not a termination of a preexisting right. The Division maintains that the action of the deputy violates no due process requirement applicable to the situation when the determination is properly viewed as a new determination rather than as the termination of a preexisting right.
Two elements are necessary before the protections of due process are applicable: (1) State action, and (2) liberty or property interests. Mathews v. Eldridge (1976), 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18. The parties in the case at bar raise no issue concerning the element of State action.
The United States Supreme Court has rejected the distinction between "rights" and "privileges" in considering the applicability of procedural due process requirements. Board of Regents v. Roth (1972), 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548; Graham v. Richardson (1971), 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534. It has also recognized that the property interests which are protected by procedural due process requirements take many forms. In Board of Regents v. Roth, supra, at 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548, Justice Stewart wrote:
"* * *
... To have a property interest in a benefit, a person clearly must have more *338 than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.
Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law  rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. Thus, the welfare recipients in Goldberg v. Kelly, supra, [(1970), 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287] had a claim of entitlement to welfare payments that was grounded in the statute defining eligibility for them. The recipients had not yet shown that they were, in fact, within the statutory terms of eligibility. But we held that they had a right to a hearing at which they might attempt to do so.
* * *" (Our insert)
Unemployment compensation benefits are provided to insured workers who are unemployed through no fault of their own. IC 1971, 22-4-1-1 (Burns Code Ed.). The Indiana Employment Security Act defines standards of eligibility, and those standards secure unemployment compensation benefits and support claims of entitlement to the benefits. Accordingly, an insured worker who is receiving benefits but whose claimed eligibility is then disputed, has a right to due process of law.[8]
In Bell v. Burson (1971), 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90, Justice Brennan noted that a procedural rule which may satisfy due process in one context may not satisfy procedural due process in every case. We must determine, therefore, the extent to which procedural due process must be afforded an insured worker before benefit rights properly can be suspended or terminated during the benefit period.
The Supreme Court considered the constitutional validity of procedures used in terminating social security benefits in Mathews v. Eldridge (1976), 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18. The argument presented therein by the Secretary of Health, Education, and Welfare is similar to the argument offered this court by the Division:
"... The Secretary does not contend that procedural due process is inapplicable to terminations of Social Security disability benefits. He recognizes, as has been implicit in our prior decisions, e.g., Richardson v. Belcher, 404 U.S. 78, 80-81, 92 S.Ct. 254, 256-257, 30 L.Ed.2d 231 (1971); Richardson v. Perales, 402 U.S. 389, 401-402, 91 S.Ct. 1420, 1427-1428, 28 L.Ed.2d 842 (1971); Flemming v. Nestor, 363 U.S. 603, 611, 80 S.Ct. 1367, 1372-1373, 4 L.Ed.2d 1435 (1960), that the interest of an individual in continued receipt of these benefits is a statutorily created `property' interest protected by the Fifth Amendment. Cf. Arnett v. Kennedy, 416 U.S. 134, 166, 94 S.Ct. 1633, 1650, 40 L.Ed.2d 15 (Powell, J., concurring); Board of Regents v. Roth, 408 U.S. 564, 576-578, 92 S.Ct. 2701, 2708-2710, 33 L.Ed.2d 548 (1972); Bell v. Burson, 402 U.S., at 539, 91 S.Ct., at 1589; Goldberg v. Kelly, supra, 397 U.S., at 261-262, 90 S.Ct., at 1016-1017. Rather, the Secretary contends that the existing administrative procedures, detailed below, provide all the process that is constitutionally due before a recipient can be deprived of that interest." (Our emphasis)
Likewise, the argument presented by Eldridge is similar to that argument advanced by Wilson in the case at bar:

*339 "... Eldridge agrees that the review procedures available to a claimant before the initial determination of ineligibility becomes final would be adequate if disability benefits were not terminated until after the evidentiary hearing stage of the administrative process. The dispute centers upon what process is due prior to the initial termination of benefits, pending review." (Our emphasis)
The Supreme Court described in Mathews v. Eldridge, supra, its three-part approach for identifying the specific dictates of due process: (1) determine the private interest which is affected by the official action; (2) determine the risk of an erroneous deprivation of such interest through the procedures used, as well as the probable value of additional or substitute procedural safeguards; and (3) determine the government's interest, including the function involved and the fiscal and administrative burdens encompassed by the additional or substitute procedural requirements.
If claimant appeals from the decision of the deputy and ultimately prevails, he is awarded full retroactive relief. The sole interest which is threatened, therefore, is the interest in uninterrupted receipt of benefits pending notice and evidentiary hearing.
In Goldberg v. Kelly (1970), 397 U.S. 254, 264, 90 S.Ct. 1011, 1018, 25 L.Ed.2d 287, the Supreme Court recognized that, if welfare benefits were interrupted pending resolution of a controversy over eligibility, an eligible recipient might be deprived of "the very means by which to live while he waits."[9]
In his concurring opinion in California Dept. of Human Resources Development v. Java (1971), 402 U.S. 121, 135, 91 S.Ct. 1347, 1356, 28 L.Ed.2d 666, Justice Douglas disagreed with California's argument that unemployment compensation benefits are not based on need: "... that simply is not true, for the history makes clear that the thrust of the scheme for unemployment benefits was to take care of the need of displaced workers, pending a search for other employment."
In enacting the Indiana Employment Security Act, the Legislature presupposed need, for IC 1971, 22-4-1-1, supra, provides:
"... As a guide to the interpretation and application of this act [22-4-1-1 - XX-X-XX-X], the public policy of this state is declared to be as follows: Economic insecurity due to unemployment is declared hereby to be a serious menace to the health, morale and welfare of the people of this state and to the maintenance of public order within this state. Protection against this great hazard of our economic life can be provided in some measure by the required and systematic accumulation of funds during periods of employment to provide benefits to the unemployed during periods of unemployment and by encouragement of desirable stable employment... ."
In considering the fairness and reliability of the existing procedure, we consider the nature of the inquiry involved. Mathews v. Eldridge, supra. A determination of Wilson's eligibility depended overwhelmingly upon issues of witness credibility and veracity. Justice Brennan noted in Goldberg v. Kelly, supra, that due process requires an opportunity to confront adverse witnesses and cross-examine them in nearly every instance where important decisions turn on questions of fact. This opportunity must come at a meaningful time. Except in emergency situations, due process requires notice and opportunity for hearing before termination. Bell v. Burson, supra; Sniadach v. Family Finance Corp. (1969), 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349.
Thirdly, we must consider the administrative burden and the costs of requiring notice and an evidentiary hearing upon demand prior to suspension or termination *340 of unemployment compensation benefits.[10] Unfortunately, neither the Division nor Wilson has provided statistical information. Obviously, the burden and costs will depend significantly upon the nature and timing of the hearing provided. We deem it inappropriate for this court to attempt to prescribe an appropriate procedure. We acknowledge the authority of the Indiana Employment Security Board to adopt, amend, or rescind such rules and regulations as are suitable for the proper administration of the Indiana Employment Security Act. IC 1971, XX-X-XX-X, supra. Our sole concern is that the rules and regulations adopted must provide a claimant opportunity for a hearing held at a meaningful time and held in a manner appropriate to the issue in contention.[11]
Justice Powell explained in Mathews v. Eldridge, supra, 424 U.S. 319, 348, 96 S.Ct. 893, 909, 47 L.Ed.2d 18, that
"... The essence of due process is the requirement that `a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it.' Joint Anti-Facist [Refugee] Committee v. McGrath, 341 U.S. [123], at 171-172, 71 S.Ct. [624], at 649 [95 L.Ed. 817]. (Frankfurter, J., concurring.) All that is necessary is that the procedures be tailored, in light of the decision to be made, to `the capacities and circumstances of those who are to be heard,' Goldberg v. Kelly, supra, 397 U.S., at 268-269, 90 S.Ct., at 1021 (footnote omitted), to insure that they are given a meaningful opportunity to present their case..."
We hold that an insured worker possesses a claim of entitlement in unemployment compensation benefits during the benefit period sufficient to constitute a *341 property interest which is protected by the requirements of due process. We further hold that the suspension and termination procedure utilized by the Indiana Employment Security Division denies insured workers such as Wilson due process, for the procedure results in suspension and termination of the unemployment compensation benefits without providing the insured worker adequate notice or opportunity for a hearing at which the insured worker may offer evidence and confront adverse witnesses at a meaningful time.
We next consider whether the Indiana Employment Security Act violates Wilson's constitutional right to due process, or whether the Indiana Employment Security Board has imposed procedures which are deficient and which are in contravention of the Act.
When an individual files his initial claim, the Division must promptly rule as to whether or not claimant is an insured worker. This status as an insured worker is based upon the amount of wages paid to the claimant for insured work by each employer during claimant's base period. When the Division rules that a claimant is an insured worker, the Division also states (1) the week ending date of the first week of the benefit period, (2) the weekly benefit amount, and (3) the maximum amount of benefits to be paid claimant for weeks of unemployment in his benefit period. IC 1971, XX-X-XX-X(a), supra.
The benefit period begins with the first week as of which the insured worker files his initial claim for recognition of his status as an insured worker, and continues for fifty-two consecutive weeks. IC 1971, XX-X-X-XX (Burns Code Ed.). Accordingly, an insured worker may anticipate receipt of unemployment compensation benefits for one year unless subsequent events cause him to become ineligible for benefits. These subsequent events include: ceasing to be able to work, to make an effort to secure work, or to be available for work (IC 1971, XX-X-XX-X (Burns Supp. 1977)); refusing without good cause to apply for or to accept suitable work (IC 1971, XX-X-XX-X, supra); receiving deductible income equal to or in excess of the benefit amount (IC 1971, XX-X-XX-X (Burns Code Ed.)).
If the Division receives information suggesting that subsequent events have made the insured worker ineligible to receive benefits, but the insured worker maintains that he remains eligible, the claimant's benefit eligibility or disqualification is disputed. We again quote a portion of IC 1971, XX-X-XX-X(e), supra:
"(e) In cases where the claimant's benefit eligibility or disqualification is disputed, the division shall promptly notify the claimant and the employer or employers directly involved or connected with the issue raised as to the validity of such claim, the eligibility of the claimant for waiting period credit or benefits, or the imposition of a disqualification period or penalty, or the denial thereof, and of the cause for which the claimant left his work, of such determination and the reasons thereof. Except as otherwise hereinafter provided in this subsection regarding parties located in Alaska, Hawaii and Puerto Rico, unless the claimant or such employer within twenty [20] days after such notification was mailed to his or its last known address, or otherwise delivered to him or it, asks a hearing before a referee thereon, such decision shall be final and benefits shall be paid or denied in accordance therewith. ..." (Our emphasis)
We have emphasized that portion of the statute which provides that benefits are to be paid or denied pursuant to the decision of the deputy only if the deputy's decision becomes final. The deputy's decision becomes final only if neither the claimant nor the employer promptly requests a hearing before a referee. What happens if the claimant or employer does request a hearing? Without violating provisions of the Indiana Employment Security Act, may the Indiana Employment Security Division withhold benefits which would be payable to an insured worker but for this dispute, pending the holding of the hearing before the referee?
*342 The Legislature enacted the Indiana Employment Security Act in order to promote the public welfare, by inter alia, providing for the payment of benefits to persons unemployed through no fault of their own. IC 1971, 22-4-1-1, supra. It is a declared purpose of the Act "to secure to the state of Indiana and to employers and employees therein all the rights and benefits which are conferred under the provisions of the Social Security Act that relate to unemployment compensation [U.S.C., tit. 42, § 1101 et seq.]... ." IC 1971, XX-X-XX-X (Burns Code Ed.). The Secretary of Labor must first certify to the Secretary of the Treasury the amount to be paid before any grant may be made to a State for a fiscal year. 42 U.S.C. § 502(a). 42 U.S.C. § 503(a) provides as follows:
"* * *
(a) The Secretary of Labor shall make no certification for payment to any State unless he finds that the law of such State, approved by the Secretary of Labor under the Federal Unemployment Tax Act, includes provision for 
(1) Such methods of administration ... as are found by the Secretary of Labor to be reasonably calculated to insure full payment of unemployment compensation when due; ... * * *"
In California Dept. of Human Resources Development v. Java (1971), 402 U.S. 121, 91 S.Ct. 1347, 28 L.Ed.2d 666 (decided April 26, 1971), the Supreme Court of the United States affirmed the three-judge District Court's ruling that a California statute precluding payment of unemployment compensation benefits when an employer takes an appeal from an initial determination of eligibility was inconsistent with 42 U.S.C. § 503(a)(1). Java concerns the initial determination; in the case at bar we deal with a suspension or termination of benefits due to events which occur after the initial determination.
In Hiatt v. Indiana Employment Security Division (N.D.Ind. 1971), 347 F. Supp. 218 (opinion filed October 27, 1971), plaintiff Hiatt had been declared eligible for unemployment compensation benefits by the Fort Wayne Branch of the Indiana Employment Security Division on July 13, 1970. Thereafter, he received four checks in the amount of $49 each. On August 21, 1970, he accepted part-time employment which caused the amount of his weekly benefits to be reduced to $43.00. Hiatt received his last check for the week ending August 22, 1970. On September 1, 1970, he was fired from his part-time employment for alleged misconduct on the job. The Division learned of the firing September 2, 1970, and on the following day a deputy ruled that Hiatt had been discharged because of his employer's dissatisfaction with the quality of Hiatt's work rather than because of misconduct. This determination meant that Hiatt remained eligible for benefits amounting to $49 per week, subject to the employer's right to appeal. When the employer did appeal, Hiatt's check was withheld in compliance with IC 1971, XX-X-XX-X(e) (Burns Code Ed.), which at that time provided as follows:
"... In the event that a hearing is requested, the payment of any disputed benefits with respect to the period prior to the final determination or decision shall be made only after such determination or decision."
Hearing was held before a referee on October 29, 1970, and six days later the referee reversed the deputy's ruling. When Hiatt appealed, the Review Board reversed the referee's decision. Hiatt was eligible to receive all benefits withheld.
An intervening plaintiff, Burney, had been declared eligible to receive benefits and had received her first benefits in January 1971. A deputy advised Burney by notice dated March 26, 1971, that her benefits were suspended because she limited the hours for which she was available for work. Burney's benefits were suspended in the same manner that Hiatt's benefits were suspended: without a prior hearing.
In Hiatt, at 347 F. Supp. 218, 223, the District Court cited Java in its opinion and considered but rejected the possible distinction which the Division seeks to make in the case at bar:

*343 "Both plaintiff Hiatt and plaintiff Burney represent a general class of people who have been or will be determined by defendants to be eligible for unemployment compensation benefits, and who have had or will have such benefits terminated, withheld, suspended, or reduced without a prior, due process hearing. The reason for such termination, withholding, or reduction of benefits, whether an appeal by the employer under § 52-1542a(e) or a subsequent weekly determination of ineligibility by a deputy under § 52-1542a(d), does not affect the basis of the court's findings under the facts here presented. Both plaintiffs Hiatt and Burney were determined to be eligible by defendants and were receiving benefits pursuant to Indiana's unemployment compensation program.
Even though defendants review on a weekly basis the eligibility of a claimant, the court finds that the concept of when benefits are `due' under the Social Security Act does not change from week to week after a claimant has been found eligible and no prior, due process hearing has been held with regard to a subsequent finding of ineligibility. The court thus finds that plaintiff Burney's benefits were `due' and could not be summarily suspended due to a deputy's determination of ineligibility under § 52-1542a(d). Having been found eligible pursuant to the procedures set forth in § 52-1542a, plaintiff Burney was entitled to benefits until defendants afforded her a hearing. To conclude otherwise would frustrate the purpose of early substitute compensation during unemployment under § 303(a)(1) of the Social Security Act... ."
Presumably in response to the District Court's decision in Hiatt, the Legislature amended IC 1971, XX-X-XX-X(e), supra, during the 1972 session.[12] The Legislature deleted the sentence quoted above in our reference to the Hiatt case. In its place, the Legislature provided the following sentence:
"In the event a hearing is requested by an employer or the division after it has been administratively determined that benefits should be allowed to a claimant, entitled benefits shall continue to be paid to said claimant unless said administrative determination has been reversed by a due process hearing."
Wilson and the Division agree that this amendment controls the situation, as in the instances of claimants Java and Hiatt, involving an appeal from an initial determination of eligibility. Wilson would apply the provision in a situation such as hers and Burney's, to require a continuation of benefit payments until such time as a due process hearing is held.
This court has a duty to construe a statute in a manner which will tend to support the constitutionality thereof. Martin v. Ben Davis Conservancy District (1958), 238 Ind. 502, 153 N.E.2d 125.
The provision here in dispute was enacted in an attempt to cure a declared defect of the statute.[13] Because it is curative in nature, the provision should be liberally construed. Martin v. Ben Davis Conservancy District, supra.
The Division emphasizes the fact that the provision refers only to hearings requested by the employer or the Division; in the case at bar, the claimant sought the hearing. At the time the dispute arose, Wilson had been determined to be an insured worker entitled to benefits for the stated benefit period unless subsequent events caused her disqualification. When *344 Wilson elected to appeal from the deputy's decision, that decision did not become final so that benefits could be paid or withheld pursuant to the decision. At that point, the Division had not only the power but also the duty to request a hearing. Otherwise, the Division would be withholding benefits which were due an insured worker during her benefit period. Such action would violate 42 U.S.C. § 503(a), and the curative purpose of the amendment would be defeated.[14]
Wilson's allegations that the Indiana Employment Security Act violates her rights to due process and due course of law, and violates the mandate of 42 U.S.C. § 503(a) must fail. Her allegations that the Indiana Employment Security Division has improperly construed the Indiana Employment Security Act must prevail.
Decision of the Review Board denying benefits to Wilson is affirmed.
Judgment of the trial court dismissing Wilson's amended complaint is reversed, and this cause is remanded to the trial court for further proceedings not inconsistent with this opinion.
Because we have filed a new opinion in this consolidated appeal, we will again entertain petitions for rehearing.
ROBERTSON, C.J., and GARRARD, J. (participating by designation), concur.
NOTES
[1] In both motions to dismiss, the defendants alleged that the trial court did not have jurisdiction over the subject matter and that Wilson failed to state a claim upon which relief could be granted. The judgment of dismissal did not explain the reason for dismissal.
[2] In our initial opinion (369 N.E.2d 675), we quoted at length from the record. No purpose would be served by again setting forth that evidence.
[3] No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." (Our emphasis)
U.S.Const. amend. XIV.
[4] All courts shall be open; and every man, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay.
Ind.Const. art. 1, § 12.
[5] We have quoted IC 1971, XX-X-XX-X (Burns Supp. 1977) in its form after certain amendments were made effective July 1, 1977. These amendments are not relevant to the issues considered herein.
[6] IC 1971, XX-X-XX-X(c) (Burns Supp. 1977) imposes upon an employing unit the duty to report to the Division any facts which may affect an individual's eligibility to receive unemployment compensation benefits.
[7] Such a refusal may affect an individual's eligibility to receive unemployment compensation benefits. IC 1971, XX-X-XX-X (Burns Supp. 1977).
[8] Justice Brennan stated in Goldberg v. Kelly (1970), 397 U.S. 254, 262, 90 S.Ct. 1011, 1017, 25 L.Ed.2d 287: "Relevant constitutional restraints apply as much to the withdrawal of public assistance benefits as to disqualification for unemployment compensation, Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963)... ."
[9] In Fuentes v. Shevin (1972), 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556, the United States Supreme Court emphasized that "important interests" are entitled to protection of due process, not only interests in "necessary" items.
[10] At some point the benefit of an additional safeguard to the individual affected by the administrative action and to society in terms of increased assurance that the action is just, may be outweighed by the cost. Significantly, the cost of protecting those whom the preliminary administrative process has identified as likely to be found undeserving may in the end come out of the pockets of the deserving since resources available for any particular program of social welfare are not unlimited." Mathews v. Eldridge (1976), 424 U.S. 319, 348, 96 S.Ct. 893, 909, 47 L.Ed.2d 18.
[11] The Division offers several examples of the "absurd" results it fears will ensue if an insured worker is found to be entitled to benefits until such time as he receives notice of suspension or termination and opportunity for a fair hearing:

(1) An unemployed person who is recalled by his employer is entitled to continue to receive benefits and may be expected to demand a continuance of the evidentiary hearing on the ground that the time scheduled is during his work hours.
The first example presupposes that claimants fraudulently seek benefits by filing claims after returning to work. The Indiana Employment Security Act provides for recovery of amounts paid to persons not entitled to benefits. IC 1971, XX-X-XX-X (Burns Supp. 1977). Furthermore, the issue of whether or not a claimant has returned to work is an issue more readily resolved by objective evidence than is the issue of whether or not an offer of work has been made which claimant has refused without good cause.
(2) Benefits would have to be paid to the estate of one who dies while receiving benefits until such time as the decedent is reasonably available to attend an evidentiary hearing.
The second example totally ignores the requirement that weekly claims must be made; our decision in no way finds fault with that requirement. Additionally, the credibility and veracity of witnesses is seldom a factor in determining whether or not the insured worker is deceased.
We emphasize the limits of our holding: (a) the Indiana Employment Security Division must give an insured worker timely and adequate notice detailing the reasons for a proposed suspension or termination of benefits during the benefit period; (b) only an insured worker who seeks a hearing must be provided a hearing, but the opportunity for a hearing must be available to all insured workers before their benefits are suspended or terminated during the benefit period; (c) the insured worker must be given a meaningful opportunity to confront adverse witnesses and present his own arguments; (d) but the hearing need be only as extensive as the particular issue in contention demands.
In the case at bar, restaurant filed its report suggesting ineligibility December 14, 1976. The Division did not suspend benefits until January 5, 1977. During that period of twenty-two days, the Division could have given notice and held a suitable hearing if Wilson requested a hearing.
[12] The Legislature declared an emergency and made the amendment effective April 1, 1972.
[13] The United States Supreme Court vacated the judgment in Hiatt and remanded the case to the District Court for a determination of whether a case or controversy remained. Burney had succeeded in having her determination of ineligibility reversed and she had been awarded retroactive benefits after the District Court entered its ruling. Indiana Employment Security Division v. Burney (1973), 409 U.S. 540, 93 S.Ct. 883, 35 L.Ed.2d 62. This occurred after the Legislature amended the statute, however, and could not have influenced the Legislature's motives.
[14] IC 1971, XX-X-XX-X (Burns Code Ed.) provides that referees shall hear and decide disputed claims. This provision is compatible with IC 1971, XX-X-XX-X(e) (Burns Supp. 1977), which prevents a deputy's decision from controlling the paying or withholding of benefits if a hearing on a disputed claim is requested.