934 F.2d 323
 UNPUBLISHED DISPOSITION
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Nicholas LITCHIN, Plaintiff-Appellant,
v.
LAWYERS TITLE INSURANCE CORPORATION, Defendant-Appellee.
 No. 90-1472.
 United States Court of Appeals, Seventh Circuit.
 Argued Jan. 15, 1991.
Decided May 15, 1991.
 
 Before FLAUM, EASTERBROOK and MANION, Circuit Judges.
 
 ORDER
 
 1
 Nicholas Litchin purchased a condominium at a sheriff's sale and sold it to Mr. and Mrs. Martin. He purchased an insurance policy from Lawyers Title Insurance Company, which insured the title in the Martins' name. Another insurance policy was issued in connection with the sale to protect the Martins' lender, First Federal Savings and Loan Association. Neither policy named Litchin as an insured party. The trustee of the bankruptcy estate of the original owner sued Litchin, claiming that the sale violated the automatic stay. Lawyers Title refused to defend Litchin from the trustee's action to collect the sale proceeds on behalf of the estate. Litchin ultimately incurred $12,247.50 in legal costs for his successful defense of his ownership of the condominium and its later sale. Litchin filed suit against Lawyers Title to recover his legal costs from the bankruptcy action. The district court granted summary judgment in favor of Lawyers Title, holding that Lawyers Title had no duty to defend Litchin since Litchin was not a named insured under the title insurance policies. Litchin appeals, and we affirm the district court.
 
 I.
 
 2
 Dalton and Anna O'Connor were the owners of a condominium unit in a complex located in Allen County, Indiana. The property was mortgaged to the People's Trust Bank at the time of purchase, December 30, 1977. The O'Connors defaulted on their mortgage, and People's Trust foreclosed, obtaining a judgment against the O'Connors on March 28, 1980, in the amount of $45,460.66. People's Trust assigned its foreclosure judgment to Fort Wayne National Bank which in turn assigned the judgment of foreclosure to Nicholas Litchin on October 16, 1980.
 
 
 3
 On December 1, 1982, the O'Connors filed a Chapter 11 proceeding in bankruptcy court in Michigan. On December 10, 1982, the sheriff of Allen County, pursuant to the state foreclosure judgment, sold the condominium at a sheriff's sale to Litchin where Litchin received a sheriff's deed.
 
 
 4
 On January 4, 1983, notice was filed in Allen County, Indiana, of the order for relief from the bankruptcy court in Michigan pertaining to the O'Connors' bankruptcy. Soon thereafter, Litchin learned of the O'Connor bankruptcy proceedings for the first time. This caused Litchin to become concerned about the property's insurability. Litchin, through his attorney, contacted a title company which eventually passed the question of title insurability to Lawyers Title. Lawyers Title reviewed the facts, including the O'Connors' bankruptcy petition, and on January 6, 1983, issued a "Commitment for Title Insurance" indicating that the "proposed insured" was "to be determined."
 
 
 5
 A few weeks later, on January 25, 1983, Litchin signed an "Agreement to Purchase Real Estate" with Thomas and Cathy Martin, where he agreed to (a) sell them the condominium and (b) provide them a policy of owner's title insurance which insured the title's marketability. Consequently, on February 9, 1983, Lawyers Title issued another "Commitment for Title Insurance." This time the "Commitment" stated that the insurer was Lawyers Title, and that the proposed insureds were the purchasers "Thomas J. Martin and Cathy L. Martin, Husband and Wife" and First Federal Savings & Loan Association of Fort Wayne, Indiana, as the mortgagee. Litchin never requested to be named as a proposed insured.
 
 
 6
 The real estate transaction between Nicholas Litchin and the Martins was closed on February 16, 1983, and on March 11, 1983, Lawyers Title Insurance Company issued two policies in connection with this condominium deal: an owner's policy with the named insureds as Thomas J. Martin and Cathy L. Martin, husband and wife (the premium for which was paid by Litchin), and a loan policy, with First Federal Savings & Loan Association as the named insured. Both policies pledged that Lawyers Title would, at its own cost, defend the "named insured" in future suits against the insured claiming defective or faulty title.
 
 
 7
 On April 5, 1984, the O'Connors' bankruptcy trustee filed a complaint in bankruptcy court against Litchin attempting to set aside the sale to Litchin because it was a post-petition transfer, fraudulent conveyance and/or transfer in violation of the automatic stay. Litchin notified Lawyers Title of the pending suit and asked for a legal defense to the suit pursuant to the title insurance policy issued at the sale of the property to the Martins. Lawyers Title declined to defend Litchin.
 
 
 8
 Litchin assumed his own defense in the bankruptcy court proceeding, and ultimately prevailed. Litchin then filed suit to recover from Lawyers Title $12,247.50 in legal fees he expended in defending his title; a defense he believes Lawyers Title owed him under the title insurance policies associated with his sale of the condominium.
 
 
 9
 The district court granted summary judgment in favor of Lawyers Title on the simple grounds that Litchin was not a named insured under either title insurance policy and cannot therefore be a beneficiary under the policies' pledge to defend the insureds in suits stemming from a claimed defect in, or encumbrance upon, the title of the property which is the subject of the policies.
 
 II.
 
 10
 Our standard of review of a district court's grant of summary judgment is de novo. Town of South Whitley v. Cincinnati Insurance Co., 921 F.2d 104, 107 (7th Cir.1990); PPG Indus. v. Russell, 887 F.2d 820, 823 (7th Cir.1989).
 
 
 11
 Title insurance is a contract of indemnity, and is not excepted from the general rules of construction but is subject to the rules generally applicable to contracts of insurance. 13A G.J. Couch, Couch on Insurance 2d, Sec. 48:111 at 106-107 (1982). In Indiana, an insurance policy is a contract between parties and in determining the liability coverage of a policy the law of contracts applies. Cincinnati Insurance Co. v. Moen, 732 F.Supp. 949, 951 (N.D.Ind.1990), citing Cincinnati Insurance Co. v. Mallon, 409 N.E.2d 1100, 1103 (Ind.App.1980). Thus, the interpretation of an insurance policy is primarily a question of law for the court. Eli Lilly and Co. v. Home Ins. Co. 482 N.E.2d 467, 470 (Ind.), cert. denied, 479 U.S. 1060 (1987). "Only when ambiguities cannot be resolved within the four corners of the contract is a fact finder to determine those extrinsic facts upon which interpretation of the contract may rest." Meridian Mutual Insurance Co. v. Richie, 540 N.E.2d 27, 28 (Ind.1989). The "four corners" doctrine provides that in construing written instruments the express language found within the four corners of the instrument determines the intent of the parties. First Sav. & Loan Ass'n v. Treaster, 490 N.E.2d 1149, 1151 (Ind.App.1986).
 
 
 12
 In the present case Litchin claims that Lawyers Title had a duty to defend him against the bankruptcy action pursuant to the title insurance policy because he paid the one-time premium for the policy and as a vendor he was a party to the contract. The duty to defend is "determined by the 'four corners' of the [pertinent] complaint and the policy to determine if the contents of the complaint, when taken at face value, allege a cause of action which is potentially covered by the policy." Hartford Acc. & Indem. Co. v. Gulf Ins. Co., 776 F.2d 1380, 1382 (7th Cir.1985) (quoting Dreis & Krump Mfg. Co. v. Phoenix Insurance Co., 548 F.2d 681, 683 (7th Cir.1977)).
 
 
 13
 Under the "Conditions & Stipulations" section of Lawyers Title Insurance Corporation's policy number 85-80-045900 issued to the owners "Thomas J. Martin and Cathy L. Martin, Husband and Wife," and policy number 82-80-067483 issued to the mortgagee First Federal Savings & Loan Association, paragraph 3(a) states:
 
 
 14
 (a) The Company [Lawyers Title], at its own costs and without undue delay, shall provide for the defense of an insured in all litigation consisting of actions or proceedings commenced against such insured.... to the extent that such litigation is founded upon an alleged defect, lien, encumbrance or other matter insured against under this policy. (Emphasis added.)
 
 
 15
 Paragraph 1(a) of said "Conditions & Stipulations" section of each policy contains the following definition:
 
 
 16
 (a) "insured": the insured named in Schedule A. The term insured also includes ... the owner of the indebtedness secured by the insured mortgage and each successor in ownership of such indebtedness....
 
 
 17
 The literal terms of the contract do not permit Litchin to be identified as an insured person subject to the protection of the paragraph 3(a) defense against suits relating to defects in title, liens and encumbrances. The definition of "insured" in the contracts specifically designates the contracts' named insured and his successors to the mortgage. The named insureds under the owner's policy and mortgagee policy are the Martins and First Federal Savings & Loan Association respectively. Neither of the policies list Litchin as being an insured person. Moreover, Litchin is a predecessor in title (not a successor) and is thus excluded from coverage under the contracts' definition of "insured." Nowhere within the "four corners" of the contracts do the policies make Litchin an insured party in consideration for his having paid the premium. Therefore, based on a "four corners" analysis, we find that there was no duty on Lawyers Title's part to defend Litchin in bankruptcy court.
 
 
 18
 Litchin, in pursuing this action, places heavy emphasis on the case Lawyers Title v. Capp, 369 N.E.2d 672 (Ind.App.1977). Litchin claims that Capp establishes the encompassing rule that in Indiana contracts for title insurance are "tripartite" agreements involving the vendor of land, the vendee and the insurer. Thus, Litchin concludes he is entitled to coverage under the policy.
 
 
 19
 In Capp, the Indiana Court of Appeals was trying to determine the insurer's subrogation rights under a title insurance policy. Factually, Capp sold the vendee a parcel of land at a certain price per acre. Title insurance had been purchased by Capp from the insurer Lawyers Title to protect vendee. After the transaction was completed it was discovered that part of the parcel in the deal had been previously sold to the local utility to accommodate power lines. Thus, a portion of the land which was the object of the deal was not, and could not be, conveyed to the vendee. The purchase price paid by vendee to Capp had mistakenly included the land that was now discovered to be owned by the local utility. Lawyers Title had negligently included the utility company's real property interest in its description of the area of land insured by the policy. Lawyers Title paid the vendee the difference between the purchase price paid and the value of the land actually conveyed to the vendee to properly reflect the vendee's diminished title holding. As a result of its payment of damages to vendee, Lawyers Title felt it was subrogated to the right of the vendee to sue Capp for the value the vendee paid and Capp received for acreage which was not conveyed. The court disagreed with Lawyers Title and prohibited it from employing a theory of equitable subrogation to collect from Capp. The court held that Lawyers Title could not collect on its own negligence.
 
 In so holding, the court noted:
 
 20
 Lawyers [Title] has failed to include the policy of insurance in the record, and we may therefore look only to the equitable basis of their asserted subrogation as we are unable to construe documents which are not before us....
 
 
 21
 We must ... limit our holding to the unusual factual setting of this particular case.
 
 
 22
 Id. at 674. The court later went on to say that its holding was "bolstered" by and limited to several specific facts, including the "fact" the title insurance policy in the case was "basically a tripartite agreement involving vendor, vendee, and insurer." Id. The court does not explain how or why it decided on this characterization of the policy (or how or why it bolsters its holding). Nor did the court explain what a "tripartite" title insurance policy is. Therefore, we have no way of applying the "tripartite" characterization in Capp to the actual attributes of the contract before us. Nor can we explain how the "tripartite" nature of the contract compels, as Litchin insists, inter-party indemnification (which is an odd assertion since Capp did not find a right to indemnification in a "tripartite" contract). What is clear from the text of the case, however, is that this characterization of the policy is intended by the court to relate only to the particularities in Capp. Additionally, the "tripartite" characterization of the Capp title insurance policy is, in essence, hypothetical, since no actual policy was submitted for the court's consideration. By contrast, we have actual contracts in the case before us now that clearly specify that there are only two parties to each of the title insurance policies (the Martins and Lawyers Title in the owners policy and First Federal and Lawyers Title in the mortgage policy). As a result, there are no obvious grounds for asserting that this contract is "tripartite." The court in Capp restricts its decision from having the definitional sweep desired by Litchin, and thus there is little reason for us to abrogate from the literal reading of the policies which establish the "bi-partite" nature of the title insurance with benefits accruing strictly to the purchasers and the lender. As a practical matter, the Capp court's "tripartite" characterization is not articulated in a way which can be cogently applied to title insurance policies generally, reducing the validity of Litchin's assertion that Capp is a touchstone in Indiana insurance law.
 
 
 23
 For all the foregoing the decision of the district court is
 
 
 24
 AFFIRMED.