Roberto **TORRES** and Walter Dinger, Plaintiffs,

v.

**NEW YORK STATE DEPARTMENT OF LABOR** and Louis L. Levine, Industrial Commissioner, Defendants,

v.

**UNITED STATES of America,** Intervenor-Defendant.

No. 70 Civ. 2408.

United States District Court, S. D. New York.

Oct. 26, 1971.

---

Dennis R. Yeager, New York City, (Robert P. Roberts, Emilio P. Gautier, Paul G. Chevigny, New York City, on the brief), for plaintiffs.

Brenda Soloff, Asst. Atty. Gen., of the State of New York (Louis J. Lefkowitz, Atty. Gen., Samuel A. Hirshowitz, First Asst. Atty. Gen., on the brief), for defendants New York State Department of Labor and Louis L. Levine.

Joseph D. Danas, Asst. U. S. Atty., (Whitney North Seymour, Jr., U. S. Atty., for Southern District of New York, L. Patrick Gray, III, Harland F. Leathers, David J. Anderson, U. S. Department of Justice, Alfred G. Albert, Louise F. Freeman, H. A. Kelly, U. S. Department of Labor, on the brief), for intervenor-defendant United States of America.

Before HAYS, Circuit Judge, and McLEAN and LASKER, District Judges.

PER CURIAM:

This class action was commenced by New York recipients of unemployment benefits seeking a declaratory judgment that New York Labor Law §§ 597, 598, and 620 (McKinney's Consol.Laws, c. 31, 1965) violated the due process clause of the fourteenth amendment and § 303(a) (1) of the Social Security Act, 42 U.S.C. § 503(a) (1) (1970), "insofar as [those sections] authorize the suspension or termination of unemployment compensation benefits without a prior hearing." In addition plaintiffs sought a permanent injunction preventing enforcement

of these provisions unless a hearing prior to the termination of benefits was granted to claimants. This court dismissed the complaint on the ground that the sections of the New York Labor Law to which the complaint is addressed, do not violate either the fourteenth amendment or the Social Security Act. Torres v. New York State Dep't of Labor, 321 F.Supp. 432 (S.D.N.Y.1971) (three-judge court). The Supreme Court vacated the judgment and remanded the case for reconsideration in light of its opinion in California Dep't of Human Resources Development v. Java, 402 U.S. 121, 91 S.Ct. 1347, 28 L.Ed.2d 666 (1971). 402 U.S. 968, 91 S.Ct. 1685, 29 L.Ed.2d 133 (1971).

We hold that nothing in the opinion of the Supreme Court in California Dep't of Human Resources Development v. Java, 402 U.S. 121, 91 S.Ct. 1347, 28 L. Ed. 666 (1971), calls for a result different from that announced in our previous decision. As to the claim of constitutional invalidity, which was not passed on in Java, Judge Hays and Judge McLean adhere to the position expressed in their former opinion, and Judge Lasker adheres to his dissent from that opinion.

The facts of the present case and the New York statutory provisions are set forth in detail in our previous opinion. 321 F.Supp. at 433–436.

In California Dep't of Human Resources Development v. Java, 402 U.S. 121, 91 S.Ct. 1347, 28 L.Ed.2d 666 (1971) the Supreme Court held that the California procedure providing automatic termination of unemployment benefits, when an employer files an appeal, violates § 303(a) (1) of the Social Security Act, 42 U.S.C. § 503(a) (1) (1970) since it is not "reasonably calculated to insure full payment of unemployment compensation when due," as the statute requires. The Supreme Court based its decision solely on the statutory ground advanced by plaintiffs, stating it is "unnecessary to reach the constitutional issue * * *." 402 U.S. at 124, 91 S.Ct. at 1350. As we adhere to our previous decision that the New York administra-

tive procedures comport with the requirements of the due process clause of the fourteenth amendment, it is only necessary to analyze the New York procedures in light of the Supreme Court's interpretation of 42 U.S.C. § 503(a) (1) (1970) in Java.

The California procedure challenged in Java involved "[t]he automatic suspension of benefits upon the employer's appeal, after an initial determination of eligibility * * *." 402 U.S. at 128, 91 S.Ct. at 1352. To summarize briefly the California procedure: a person claiming unemployment benefits first filed forms indicating the basis of his claim; pertinent information was requested from his former employer; then an Eligibility Benefits Rights Interview was held which both the employer and the claimant could attend and at which they could present relevant information. If the administrative interviewer found the claimant to be eligible, benefit payments began immediately. If the employer then appealed that initial determination of eligibility within 10 days, all payments were "stopped pending determination on appeal before an Appeals Board Referee." 402 U.S. at 128, 91 S. Ct. at 1352. This *automatic* suspension, after the eligibility determination, was the fatal flaw in the California procedure.

"We conclude that the word 'due' in § 303(a) (1), when construed in light of the purposes of the Act, means the time when payments are first administratively allowed as a result of a hearing of which both parties have notice and are permitted to present their respective positions; any other construction would fail to meet the objective of early substitute compensation during unemployment. Paying compensation to an unemployed worker promptly after an initial determination of eligibility accomplishes the congressional purposes of avoiding resort to welfare and stabilizing consumer demands; delaying compensation until months have elapsed defeats these purposes. It seems clear there-

fore that the California procedure, which suspends payments for a median period of seven to 10 weeks pending appeal, after an initial determination of eligibility has been made, is not 'reasonably calculated to insure full payment of unemployment compensation when due.' "

Id. at 133, 91 S.Ct. at 1355 (footnote omitted).

The *Java* decision does not control the instant case. Plaintiff Torres was initially determined to be eligible to receive benefits on the basis of his written statement that he had been laid off work. Due to a mailing error, the local insurance office learned of the employer's stated reason for the discharge (repeated lateness for work) only after benefit payments had commenced. Thereafter the local insurance office conducted an interview with Torres during which he admitted that he had been late for work "a few times." On the basis of this interview the local insurance office, pursuant to New York Labor Law § 597(3), re-evaluated the facts and redetermined that plaintiff was ineligible for benefits because he had provoked his discharge. The suspenion of benefits was, therefore, not an automatic consequence of Torres' employer's action, nor was it made without a hearing. Unlike the situation in *Java*, in Torres' case there was administrative redetermination on the basis of the original facts that benefits were not "due." This decision was made after a hearing procedure identical to that initially used to determine eligibility. The hearing procedure prior to the suspension of benefits involved an interview, at which claimant had an opportunity to present information favorable to his version of the facts or unfavorable to that of his employer, and to answer charges. As the issue and the procedure were the same at both the determination and redetermination stages, we believe that the procedure is "reasonably calculated" to insure that benefits are paid "when due."

Plaintiff Dinger, laid off by his employer due to slack business, was originally found eligible for benefits. Under New York administrative regulations, a claimant must report to an insurance office once a week and certify that he is ready and willing to work. Department of Labor Field Operations Manual §§ 5030–5042. After receiving ten benefit payments, Dinger was interviewed at an insurance office about his availability for work. On the basis of information Dinger supplied in response to questions, and on the basis of newspaper listings of available jobs, the interviewer determined that Dinger was ineligible to continue to receive benefits because he had not demonstrated "an active, realistic and diligent search for work." The benefits were suspended on the basis of new factual circumstances which could not have been considered at the original eligibility interview. The *Java* decision is therefore irrelevant to plaintiff Dinger: not only was the eligibility redetermination based on new facts, but the plaintiff supplied the insurance office with those very facts at an administrative interview. This administrative procedure for redetermining that benefits were not "due" fully comports with the requirement of 42 U.S.C. § 503(a) (1) (1970).

Under the order of this court the class represented by these plaintiffs comprises all those recipients of unemployment compensation benefits in New York who might have the benefits terminated without a hearing. As to recipients similarly situated to the named plaintiffs, the administrative procedure for the redetermination of eligibility includes a hearing fully compatible with the requirements of 42 U.S.C. § 503(a) (1) (1970). As to those recipients who might, at one time, have had payments suspended after an employer's appeal from an initial determination of eligibility, the claim is now moot in view of the administrative regulation adopted after *Java* requiring "benefits [to be continued] unless and until a Referee or Ap-

peal Board decision thereafter holds that benefits are not payable." The conflict between the previous procedure for the suspension of benefits pending an employer's appeal and the requirements of the Social Security Act has been cured by the change in the administrative procedure eliminating the automatic suspension feature condemned in *Java*.

For the foregoing reasons we adhere to our previous decision dismissing the complaint.