Donna **WILSON, Appellant,**

v.

**BOARD OF the INDIANA EMPLOYMENT SECURITY DIVISION et al., Appellees.**

No. 279S38.

Supreme Court of Indiana.

Feb. 8, 1979.

David F. Shadel, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Darrel K. Diamond, Deputy Atty. Gen., Indianapolis, for appellees.

## ON PETITION TO TRANSFER

PIVARNIK, Justice.

This cause comes to us on a transfer petition by the appellees following an adverse ruling by the Court of Appeals, First District. Appellant Donna Wilson sought review in the Court of Appeals of a decision of the Review Board of the Indiana Employment Security Division (Review Board), affirming a referee's denial of unemployment compensation benefits. She also appealed from an order of the Marion Circuit Court dismissing an amended complaint she had filed against the Indiana Employment Security Division (Division), its review board, and numerous other parties. The Court of Appeals granted Wilson's motion for consolidation of both causes, and they were considered together. *Wilson v. Review Bd. of Indiana Employment Security Div.*, (1978) Ind.App., 373 N.E.2d 331, *vacating* (1977) Ind.App., 369 N.E.2d 675.

Donna Wilson worked as a waitress at a Steak and Shake Restaurant on Pendleton Pike in Indianapolis, Indiana. Her employment terminated November 12, 1976, when, complaining of illness, she left work early despite instructions that she should remain until the end of her scheduled work shift.

Wilson filed a claim for unemployment compensation benefits. On or about December 12, 1976, Wilson returned to the restaurant to inquire concerning a check due for her past services. While Wilson was at the restaurant, the restaurant Manager, in the presence of the District Manager, twice offered to reinstate Wilson in the same job she had held previously. She refused both offers. Wilson stated that she did not want to work under the supervision of the head waitress who had refused Wilson's request to leave early on November 12, 1976.

On review of the decision of the Review Board, the Court of Appeals found that Mrs. Wilson had refused an offer of suitable work without good cause and was therefore ineligible for unemployment compensation benefits for the time period after the refusal of such work. The court accordingly affirmed the decision of the Review Board and this ruling is not the subject of this petition to transfer. *Cf. Wilson, supra* at 373 N.E.2d 334.

The second case, which is the one that is the subject of this transfer petition, was filed by Wilson in the Superior Court of Marion County on January 6, 1977, and was later transferred to the Marion County Circuit Court after the Judge of the Superior Court had disqualified himself. This action was filed after a deputy in the Division had made the initial determination that Wilson was no longer eligible for benefits. This action was a verified complaint for declaratory judgment and injunctive relief and damages against the Review Board and its members, Division officers and employees and the State Auditor. In this action Wilson challenged the procedure by which the Division suspended claimants' benefits. It was her position that the Division could not suspend the payment of benefits until there had been a full evidentiary hearing with findings and conclusions made pursuant to said hearing. She further claimed that the failure to do so violated her rights, along with those of persons similarly situated, by denying them the due process guarantees

afforded by the constitutions of the State of Indiana and of the United States. The original complaint was later amended by the plaintiff, and defendant filed motions to dismiss for lack of jurisdiction of the trial court, and for failure to state a claim upon which relief could be granted. The trial court dismissed the amended complaint without stating its reason therefor. The Court of Appeals found that the trial court erred in its dismissal of Wilson's amended complaint and accordingly reversed the trial court, and remanded the cause for further proceedings consistent with its finding that procedural due process requires a full adversary hearing prior to the termination of unemployment benefits. As we disagree with this conclusion, we accordingly grant transfer and vacate the opinion of the Court of Appeals.

At the outset it is necessary to address the issue of whether or not Wilson's failure to exhaust her administrative remedies precluded the trial court from entertaining jurisdiction over the verified complaint. Wilson's complaint did not raise as an issue the denial of her individual claim for benefits. Rather, the gist of her action was a constitutional challenge to the procedures employed by the Division in suspending and terminating benefits. The Division responds that the Indiana Employment Security Act, Ind.Code § 22–4–1–1 et seq. (Burns 1974), provides a comprehensive procedure for the determination of eligibility benefits, whereby decisions of the Review Board are ultimately reviewable by the Court of Appeals. The Division argues that the jurisdiction of the Court of Appeals is exclusive and therefore the trial court had no jurisdiction over Wilson's amended complaint. We disagree.

It is true, as a general rule, that no one is entitled to judicial relief for an alleged or threatened injury until the prescribed administrative remedy has been exhausted. However, this rule should not be applied mechanistically. Rather, in determining whether or not a plaintiff should be allowed to bypass available administrative channels a court should consider the following factors: the character of the question presented, i. e., whether the question is one of law or fact; the adequacy or competence of the available administrative channels to answer the question presented; the extent or imminence of harm to the plaintiff if required to pursue administrative remedies, and; the potential disruptive effect which judicial intervention might have on the administrative process.

In the present case, the question presented is of constitutional character. With all due respect, we think that the resolution of such a purely legal issue is beyond the expertise of the Division's administrative channels and is thus a subject more appropriate for judicial consideration.

In sum, we hold that given the constitutional character of the issue presented by Wilson's complaint, it was not necessary for her to press the issue through administrative channels as a precondition to judicial review. We therefore conclude that the trial court had jurisdiction over this matter and erred by dismissing Wilson's complaint. However, since the issues have been fully briefed and argued before this Court, we see no need to remand the cause for any further proceedings and so will proceed to the merits of this case.

The principal issue for our consideration concerns whether a claimant for unemployment compensation benefits, who has been found eligible for such benefits for certain weeks of unemployment, may thereafter be denied benefits for other weeks upon a finding of failure to meet the eligibility requirements for those weeks, without first being given a full adversary evidentiary hearing. In other words, once eligibility has been established, must the Division continue to pay weekly benefits until there has been a full, adversary evidentiary determination that benefits are no longer payable. The Court of Appeals found that such a pre-termination hearing is a prerequisite to the discontinuance of benefits under due process considerations, and under the provision of the Social Security Act requiring the "payment of unemployment compensation benefits when due." 42 U.S.C. § 503(a)

(1964). However, in reaching its decision, the Court of Appeals erroneously placed much reliance upon a decision by a federal district court which was later vacated and remanded by the United States Supreme Court. *Hiatt v. Indiana Employment Security Div.*, (N.D.Ind.1971) 347 F.Supp. 218, *vacated and remanded sub nom. Burney v. Indiana Employment Security Div.*, (1973) 409 U.S. 540, 93 S.Ct. 883, 35 L.Ed.2d 62, *dismissed as moot on remand*, Civ.No. 70 F. 122 (N.D.Ind. June 8, 1973). Before deciding this issue, it is necessary to review the procedures presently employed by the Division when discontinuing a claimant's benefits.

When a person applies for benefits, the first determination made is that of eligibility. That is, the Division first determines that the applicant does have status as an insured worker pursuant to Ind.Code § 22–4–17–2(a) (Burns Supp.1978). Once established, this status determination has a continuing effect throughout the period of eligibility. After a claimant is recognized as an insured worker, the act requires that the affected employer be notified of such fact. Ind.Code § 22–4–17–2(b) (Burns Supp.1978). The employer then has an opportunity to respond to the determination of eligibility and lodge objections thereto. If the employer does not respond or object, the Division will deem the claimant's discharge not to have been made under disqualifying circumstances. The act also *requires* that employers, having knowledge of facts which may affect an individual's eligibility promptly report such facts to the Division. Ind.Code § 22–4–17–2(c) (Burns Supp.1978).

After a claimant is recognized as an insured worker, the worker is required to appear at an interview each week. A deputy then makes a determination, for each week in which the worker claims waiting period credit or benefit rights, as to whether or not the insured worker is eligible for such credit or benefits for that particular week. In the alternative, the deputy may refer the claim to a referee who makes the determination after holding a hearing. Ind. Code § 22–4–17–2(d) (Burns Supp.1978). At the weekly interviews, a claimant may be found ineligible for reasons such as failure to be available for work, for not making an effort to secure work, for receiving deductible income in excess of the benefit amount or, like Wilson, for refusal, without good cause, to apply for or to accept suitable work when offered. Ind.Code § 22–4–14–1 et seq. (Burns Supp.1978).

In cases where the claimant's benefit eligibility or disqualification is disputed, Ind. Code § 22–4–17–2(e) (Burns Supp.1978) provides in pertinent part:

"The division shall promptly notify the claimant and the employer or employers directly involved or connected with the issue raised as to the validity of such claim, the eligibility of the claimant for waiting period credit or benefits, or the imposition of a disqualification period or penalty, or the denial thereof, and of the cause for which the claimant left his work, of such determination and the reasons thereof. Except as otherwise hereinafter provided in this subsection regarding parties located in Alaska, Hawaii and Puerto Rico, unless the claimant or such employer within twenty [20] days after such notification was mailed to his or its last known address, or otherwise delivered to him or it, asks a hearing before a referee thereon, such decision shall be final and benefits shall be paid or denied in accordance therewith. . . . If such hearing is desired the request therefor shall be filed with the board in writing within the prescribed periods as above set forth in this subsection and shall be in such form as the board may prescribe. In the event a hearing is requested by an employer or the division after it has been administratively determined that benefits should be allowed to a claimant, entitled benefits shall continue to be paid to said claimant unless said administrative determination has been reversed by a due process hearing. Benefits with respect to any week not in dispute shall be paid promptly regardless of any appeal."

In the present case, the Division recognized Wilson's status as an insured worker on December 2, 1976. She first received benefits for the week ending November 27, 1976. On December 14, 1976, Wilson's former employer submitted a report to the Division indicating that Wilson had refused an offer of suitable employment. On January 4, 1977, Wilson appeared at the local office to file her weekly claim. The deputy informed her that her benefits were being suspended immediately because of her refusal of the offer of suitable work. The next day, the deputy mailed Wilson written notice informing her that her benefit rights were suspended effective the week ending December 18, 1976. On January 17, 1977, Wilson filed her request for a hearing before a referee. On February 9, 1977, 36 days after her benefits were suspended and 23 days after she requested a hearing, a full evidentiary hearing was held at which the referee upheld the deputy's decision to discontinue Wilson's benefits.

The Division maintains that, assuming Wilson has an interest in unemployment benefits which is subject to due process strictures, the above procedures afforded her all of the protection which is constitutionally due. Wilson, on the other hand, contends that due process and the Social Security Act require that the full hearing before the referee take place before a claimant's benefits are discontinued.

■ Two elements are necessary before the protections of due process are applicable: (1) state action, and; (2) a constitutionally protected liberty or property interest. *Mathews v. Eldridge*, (1976) 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18. Inasmuch as the injury alleged by Wilson was brought about pursuant to an Indiana statute, the existence of the element of state action is not an issue here.

■ We think it is equally clear that Wilson had a constitutionally protected property interest in the receipt of unemployment benefits. The concept of property interests has been defined by the United States Supreme Court as follows:

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people must rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.

"Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. Thus, the welfare recipients in *Goldberg v. Kelly*, [(1970) 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287] had a claim of entitlement to welfare payments that was grounded in the statute defining eligibility for them. The recipients had not yet shown that they were, in fact, within the statutory terms of eligibility. But we held that they had a right to a hearing at which they might attempt to do so."

*Board of Regents v. Roth*, (1972) 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548, 561. Like the welfare claimants in *Goldberg, supra*, Wilson had a claim of entitlement to unemployment benefits which was grounded in the statute defining eligibility for them. Benefits are provided to insured workers who are unemployed through no fault of their own. Ind.Code § 22–4–1–1 (Burns 1974). The Indiana Employment Security Act defines standards of eligibility, and those standards serve both to secure unemployment compensation benefits and to support claims of entitlement to those benefits. Accordingly, Wilson, as an insured worker who was receiving benefits but whose claimed eligibility was later disputed, had a right to due process of law.

▪ ·Due process is not a technical conception with a fixed content unrelated to time, place and circumstances. *Cafeteria Workers v. McElroy,* (1961) 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230. Rather, due process is a flexible concept which calls for such procedural protections as the particular situation demands. *Mathews v. Eldridge, supra* at 424 U.S. 334, 96 S.Ct. 902, 47 L.Ed.2d 33. In order to determine the specific dictates of due process in a given situation, it is necessary to balance three distinct factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, along with the probable value, if any, of additional or substitute procedural safeguards, and; (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail. *Id.* at 424 U.S. 335, 96 S.Ct. 903, 47 L.Ed.2d 33.

The foregoing analysis has been applied by other courts to constitutional challenges to state unemployment compensation procedures. In *Torres v. New York State Dep't of Labor,* (S.D.N.Y.1971) 321 F.Supp. 432, the court was confronted with a challenge to New York's procedural scheme which provided claimants with a post-termination hearing in substantially the same manner as Indiana. There the court stated:

> "[T]he procedures employed by New York in the administration of unemployment compensation benefits comport with minimum standards of due process. Claimants participate in an application interview, weekly benefit rights interviews, periodic reinterviews and, as needed, claim adjustment interviews. Information which the agency has received is investigated and brought to the claimants attention at these interviews. Finally, a full due process hearing is provided, with both administrative and judicial review, and any determination favorable to the claimant results in fully retroactive payments."

*Id.,* at 437–38. While an appeal from this decision was pending, the United States Supreme Court decided the case of *California Dept. of Human Resources Development v. Java,* (1971) 402 U.S. 121, 91 S.Ct. 1347, 28 L.Ed.2d 666. Because *Java* interpreted the "when due" requirement of 42 U.S.C. § 503(a), the statutory provision relied upon by the appellants in *Torres,* the Supreme Court remanded the *Torres* decision for reconsideration in light of *Java. Torres v. New York State Dep't. of Labor,* (1971) 402 U.S. 968, 91 S.Ct. 1685, 29 L.Ed.2d 133. Upon remand, the district court adhered to its previously expressed position denying the claim of constitutional invalidity, distinguished *Java* on its facts, and concluded that its decision was not affected by *Java. Torres v. New York State Dep't of Labor,* (S.D.N.Y.1971) 333 F.Supp. 341. On resubmission to the Supreme Court, this second opinion by the district court was summarily affirmed. *Torres v. New York State Dep't of Labor,* (1972) 405 U.S. 949, 92 S.Ct. 1185, 31 L.Ed.2d 228.

In *Java* there was an initial administrative determination that the claimant was eligible for unemployment benefits. The employer objected and appealed this determination. Pursuant to California law the claimant's benefits were suspended pending the resolution of the employer's appeal. The Supreme Court found that according to this procedural scheme, benefits were not being paid "when due" as required by 42 U.S.C. § 503(a) (1964). *Java, supra,* at 402 U.S. 134–36, 915 S.Ct. 1355–56, 28 L.Ed.2d 674–76. In *Torres,* on the other hand, benefits were not suspended until after an administrative determination of ineligibility based upon disqualifying facts and circumstances which were not apparent until after the initial qualification status was established. The *Torres* court thus found the claimant's reliance on *Java* and 42 U.S.C. § 503(a) (1964), to be unfounded since benefits were not "due" during the period of suspension. *Torres, supra,* 333 F.Supp. at 344. The present case involves an *employee* appeal following an administrative determination of *ineligibility,* rather than an *employer* appeal following an administrative determination of *eligibility,* and is thus like *Torres* rather than *Java.*

Another important review of the federal constitutional and statutory requirements, as to state unemployment compensation procedures, was made in relation to Connecticut law. That state's procedures came under constitutional attack in *Steinberg v. Fusari,* (D.Conn.1973) 364 F.Supp. 922. The procedures employed by Connecticut at that time were substantially the same as those which were upheld in *Torres.* However, the district court in *Steinberg* distinguished *Torres* from the case before it on the basis that the average delay in resolving disputed claims in New York was 45 days whereas the average delay in resolving claimant-appeals in Connecticut was 126 days. The court further cited statistics which showed that for one month in Connecticut, 99.4% of the intrastate appeals at the first administrative appellate level took more than 45 days, and that 97.4% took more than 75 days from appeal to decision. The court found that this more lengthy delay was excessive such that the due process rights of claimants were violated.

After an appeal from the *Steinberg* decision was docketed in the United States Supreme Court, and while said appeal was pending, Connecticut enacted major revisions in its unemployment compensation laws. One of the major purposes of this revision was to increase the speed with which full hearings would be made available to claimants appealing adverse eligibility determinations. The Supreme Court then vacated the decision of the district court and remanded the cause for reconsideration in light of the amended procedures. In doing so, the Supreme Court made the following observations:

"Identification of the precise dictates of due process requires consideration of both the governmental function involved and the private interests affected by official action. As the Court recognized in *Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1970), '[T]he formality and procedural requisites for [a due process] hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings.' In this context, the possible length of wrongful deprivation of unemployment benefits is an important factor in assessing the impact of official action on the private interests. Prompt and adequate administrative review provides an opportunity for consideration and correction of errors made in initial eligibility determinations.

Thus, the rapidity of administrative review is a significant factor in assessing the sufficiency of the entire process."

*Fusari v. Steinberg,* (1975) 419 U.S. 379, 389, 95 S.Ct. 533, 539–40, 42 L.Ed.2d 521, 529. (citations omitted).

■ Implicit in the Supreme Court's holding in *Steinberg* is the idea that procedural due process does not require a full evidentiary hearing prior to the discontinuance of benefits as contended by appellant in the present case. The *Steinberg* court simply remanded the case for reconsideration in light of revisions in Connecticut law. These revisions did not provide for a full pre-termination hearing, but rather, they were merely designed to speed up the time in which a post-termination hearing was afforded. If the Supreme Court was of the opinion that a pre-termination hearing was constitutionally required, they would not have remanded the *Steinberg* case for further consideration in light of revisions which did not even provide for such a hearing. Thus, it is clear that all that is required by the Due Process Clause is a procedural scheme whereby a claimant is afforded a full evidentiary hearing within a reasonable time after the termination of benefits. Such a procedural scheme would presumably satisfy the "when due" requirements of the Social Security Act as well. *See Torres, supra,* 333 F.Supp. at 343–44. The only issue remaining in the present case, then, is whether or not Indiana's procedures provide claimants with a full hearing within a reasonable time after their benefits have been terminated.

■ Statistics submitted by the Indiana Employment Security Division indicate that for calendar year 1977, 89.1% of all appeals were completed in a period of time from

between 0 and 45 days. We also note that appellant Wilson obtained her full hearing 36 days after her benefits were suspended (the 36 day figure includes the 13 day delay between the time when Wilson's benefits were suspended and the time when she filed her request for a hearing). It is apparent that claimants in Indiana who appeal adverse eligibility determinations are afforded a full evidentiary hearing within a reasonable time after their benefits have been discontinued, since the vast majority of appeals are resolved within the 45 day period which was approved by the Supreme Court in *Torres*. Accordingly, we hold that the procedures followed by the Division comport with the minimal standards for due process as expressed by the Supreme Court in *Torres* and *Steinberg*.

Transfer is granted and the opinion of the Court of Appeals is vacated. This case is remanded to the trial court with instructions to enter judgment in favor of the defendant-appellees.

GIVAN, C. J., and HUNTER and PRENTICE, JJ., concur.

DeBRULER, J., dissents with opinion.

DeBRULER, Justice, dissenting.

With reasonable effort the trial court below, given an opportunity to do so, could determine the form and effect of the administrative practices utilized by the Employment Security Division at the deputy level in making determinations of eligibility and disqualifications in disputed cases. The record before us presently is somewhat hazy in this regard. Certainly the statute, Ind. Code § 22–4–17–2(d) and (e) quoted in part in the majority opinion is a primary determinant of the practices, but it is equally apparent that Division itself has made some law which guides these practices.

From the standpoint that our determination upon the issue of whether these administrative practices satisfy basic constitutional requirements has the potential of affecting vital interests of many, many individuals and the public interest being served by this substantial agency of state govern-

ment, and in light of our conclusion that the trial court had jurisdiction to hear this case, contrary to the position taken by that court when it dismissed the suit, this case should be remanded to that court for trial. Such a result would be fair to Ms. Wilson and the Division, and would in all likelihood provide a better definition of the practices followed in Ms. Wilson's claim and claims similar to it. Such a defining process could, in addition to providing this Court with a complete record, conceivably and in and of itself result in the adoption by the agency of revised rules governing the practice before it, or in the claimant becoming satisfied that she had been treated in accordance with due process, in either of which eventualities a constitutional adjudication by this Court would then become unnecessary. However, the majority calls for a resolution of the merits of Wilson's due process claim on the record presented. As presented the administrative practices employed by the Division at the deputy level for resolving claims in which eligibility or disqualification to receive weekly benefits are present and disputed, do not satisfy basic constitutional requirements of due process and due course of law. An essential attribute thereof is absent from the process by which the deputy arrives at his determination and it is that no requirement is imposed upon the deputy to weigh any answer given by the claimant to the charges of the employer contained in the Form 501 in the course of making a determination of ineligibility or disqualification. The answer may be only a statement of the claimant or a friend who has accompanied the claimant to the office to file a weekly claim; it may only be a doctor's excuse or a prescription for medicine; it may only be a newspaper article regarding working conditions; it may be an offer by the claimant for the deputy to view a cast on the claimant's arm or a receipt for automobile repairs. But a judicial-like consideration of just such responses by the initial decision maker is, in my judgment and in the judgment of the courts which decided the cases of *Torres v. New York State Dept. of Labor*, (S.D.N.Y.1971) 333 F.Supp. 341; *Steinberg v. Fusari*, (D.Conn.

1973) 364 F.Supp. 922; and *Steinberg v. Fusari*, (1975) 419 U.S. 379, 95 S.Ct. 533, 42 L.Ed.2d 521, an essential part of a fair process by which an adjudication can be made that a person, unemployed without fault, has become disqualified to receive unemployment benefits.