**INDIANA CIVIL RIGHTS COMMISSION, David L. Staples as Chairman of the Indiana Civil Rights Commission and Gerald Lawlis, Appellants/Respondents,**

v.

**KIGHTLINGER & GRAY,**
**Appellee/Petitioner.**

**No. 49A02–9002–CV–127.[1]**

Court of Appeals of Indiana,
Fifth District.

Feb. 18, 1991.

1. This case has been diverted to this office by order of the Chief Judge.

Jacquelyn Thompson, Indianapolis, for appellants/respondents.

Susan B. Tabler, Arthur P. Kalleres, Indianapolis, for appellee/petitioner.

BARTEAU, Judge.

This is an appeal following a grant of declaratory judgment. There are two issues:

1. Whether the trial court erred in assuming jurisdiction?
2. Whether the trial court erred in its determination that no employment relationship existed?

We affirm.

## I. FACTS

Appellant Lawlis was a senior partner with the appellee law firm of Kightlinger & Gray. He has been a recovering alcoholic since approximately 1984. The other senior partners expelled Lawlis from the firm

in 1987. As a result, Lawlis filed a complaint with the Indiana Civil Rights Commission (ICRC). Lawlis' complaint alleged he was subjected to unlawful handicap discrimination. He asserted that his handicap was "a history of alcoholism" and that his expulsion from the partnership was a result of discrimination due to his status as an alcoholic.

Kightlinger responded to the complaint with a motion to dismiss alleging that a "partner" is not an employee, that discrimination against a partner does not constitute "discrimination relating to employment" and that partnerships are beyond the scope of the Indiana Civil Rights Law. Ind.Code 22-9-1-1 *et seq.* The ICRC denied the motion to dismiss and concluded that "[d]uring the period relevant to the Complaint of Discrimination the relationship between the parties was that of an employment". The ICRC also ruled that "[t]he Indiana Civil Rights Commission has subject matter jurisdiction in this case." Kightlinger filed a petition for reconsideration by the full commission. No ruling was ever entered on that petition.

Approximately a month after filing the petition for reconsideration, Kightlinger filed a petition for judicial review (I.C. 4-21.5-5-1) and complaint for declaratory judgment (I.C. 34-4-10-1) in Marion County Superior Court. The petition alleged that Kightlinger had exhausted all existing administrative remedies with respect to the ICRC order denying the motion to dismiss. Further, the petition alleged Kightlinger would suffer immediate, irreparable and needless harm if forced to proceed with the ICRC's investigatory process and public hearing. Kightlinger asserted the investigation and hearing would require disclosure of Lawlis' work as a lawyer, violating both Ind. Professional Conduct Rule 1.6(a),[2] and the statutory prohibition against disclosure of confidential client communications, I.C. 34-1-14-5.[3]

---

**2. RULE 1.6 CONFIDENTIALITY OF INFORMATION**

(a) A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation....

**3. I.C. 34-1-14-5 Incompetent witnesses**

Sec. 5. Except as otherwise provided by statute, the following persons shall not be competent witnesses:

. . . .

(2) Attorneys, as to confidential communications made to them in the course of their profes-

After the Superior Court assumed jurisdiction and more than 20 months after Lawlis filed his complaint, the ICRC began an investigation. It issued a request for information to Kightlinger asking such questions as whether Lawlis' handicap (alcoholism) affected the performance of his duties.

Kightlinger then filed a petition to stay agency action with the Marion County Superior Court. Subsequently, the court entered an order enjoining the ICRC from proceeding with an investigation pending final judgment. On December 14, 1989 the court issued a declaratory judgment in favor of Kightlinger. Lawlis appeals.

## I.  JURISDICTION

■ In general, only final agency actions are ripe for judicial review. *State ex rel. Paynter v. Marion County Superior Court, Room No. 5* (1976), 264 Ind. 345, 344 N.E.2d 846. Kightlinger contends that the ICRC order denying its motion to dismiss and affirmatively asserting jurisdiction was a final order because it effectively closed the issue of whether the partnership was an employment relationship. Final agency action is defined as "(1) the entry of an order designated as a final order under this article; or (2) any other agency action that disposes of all issues in a proceeding for all parties after the exhaustion of all available administrative remedies concerning the action." I.C. 4–21.5–1–6.

The ICRC order was clearly not a final agency action. It only addressed the issues raised in Kightlinger's motion to dismiss and did not go to the merits of the complaint. The order was not designated a final order nor was it dispositive of all issues. The fact that the order established jurisdiction and made a legal interpretation of the term "related to employment" does not make it a final order or final agency action for purposes of judicial review. *Paynter, supra.*

■ Kightlinger alternately argues that the ICRC decision was reviewable as a non-final action. Judicial review of non-final agency action is available only if the party seeking review establishes both the threat of immediate and irreparable harm and that no adequate remedy exists at law. I.C. 4–21.5–5–2(c) [4].

In *Wilson v. Review Bd. of Ind. Employment Sec. Div.* (1979), 270 Ind. 302, 385 N.E.2d 438, *cert. den.* 444 U.S. 874, 100 S.Ct. 155, 62 L.Ed.2d 101, the Indiana Supreme Court established several factors for determining the appropriateness of judicial intervention in non-final agency actions. The first factor is whether the question is one of law or fact. *Id.* 385 N.E.2d at 441. In the case before us, the question raised by Kightlinger is one of law, namely, whether a partner is in an employment relationship with a partnership. Questions of law are uniquely suited for determination by a court of law. *Board of Trustees of Public Employees' Retirement Fund v. Miller* (1988), Ind., 519 N.E.2d 732; *Public Serv. Comm'n. v. City of Indianapolis* (1956), 235 Ind. 70, 131 N.E.2d 308.

The second factor is whether the available administrative channels are adequate or competent to answer the question presented. Neither the Administrative Orders and Procedures Act (I.C. 4–21.5–1–1 *et seq.*) nor the Indiana Civil Rights Law (I.C. 22–9–1–1 *et seq.*) provide for an administrative challenge to an initial determination of jurisdiction. Therefore, Kightlinger would have no administrative forum on this issue.

The third factor is whether the plaintiff faces extensive or immediate harm if required to pursue administrative remedies. The extent or imminence of harm to Kightlinger if required to pursue administrative remedies is extreme. The necessity of breaching attorney/client confidentiality in order to present any defense to Lawlis' complaint would occur regardless of the

---

sional business, and as to advice given in such cases.

**4.** I.C. 4–21.5–1–1 *et seq.* superseded I.C. 4–22–1–1 *et seq.* effective July 1, 1987. The previous statute referred to judicial review of non-final

orders as an exception to the finality rule while the present statute directly provides a method for appealing non-final orders. However, the criteria, immediate and irreparable harm and inadequate remedy at law, are nearly identical.

outcome of the ICRC investigation. Harm to Kightlinger would necessarily ensue.

The final *Wilson* factor is whether judicial intervention might disrupt the administrative process. In this case, judicial intervention did interrupt the administrative process. The trial court enjoined the ICRC from continuing the discrimination investigation. However, the facts of this case, when evaluated in the manner suggested in *Wilson*, still strongly suggest that judicial review of the non-final order is appropriate.

■ Further, while cases procedurally similar to the one before us have been held inappropriate for judicial intervention, the unique factor in this case is that the harm alleged by Kightlinger would occur regardless of the outcome of the administrative action. *See State ex. rel. Paynter v. Marion County Superior Court Room No. 5, supra* (harm alleged was that they would be found to be a health facility, and therefore operating without a license); *Downing v. Board of Zoning Appeals of Whitley County* (1971), 149 Ind.App. 687, 274 N.E.2d 542 (harm alleged was that the mobile home park would receive zoning); *Indiana Civil Rights Comm'n v. Meridian Hills Country Club, Inc.* (1976), 171 Ind.App. 341, 357 N.E.2d 5 (harm alleged was that the country club would be found to be an employer); *Indiana Alcoholic Beverage Comm'n. v. McShane* (1976), 170 Ind.App. 586, 354 N.E.2d 259 (harm alleged was that the ABC would change its rule negatively affecting McShane.) When the harm alleged cannot be rectified by either a favorable agency decision or judicial review following a final order, then judicial review of the non-final order is appropriate. *Wilson, supra; South Bend Fed'n of Teachers v. National Ed. Ass'n.* (1979), 180 Ind. App. 299, 389 N.E.2d 23.

If judicial review were disallowed at this stage, the ICRC investigation would force Kightlinger to open its files of cases handled by Lawlis in order to present a defense against the discrimination claim. However, Kightlinger could not ethically reveal any information relating to representation of a client, without permission from that client. Prof.Cond.R. 1.6(a).

While Kightlinger might receive permission from some clients to make portions of their files public, the likelihood of a client authorizing complete disclosure is uncertain. Further, I.C. 34–1–14–5 prevents an attorney from disclosing confidential client information and legal advice without client acquiescence.

The unique constraints placed upon attorneys severely limits Kightlinger's options in this case. It could present no defense to the discrimination claim and would thereby expose itself to a summary determination of discrimination. It could also attempt to defend itself with the limited information available. The harm to the firm is obvious. It cannot ethically present an adequate defense to Lawlis' complaint. In essence, it must either silently accept a determination that it discriminated against Lawlis due to his status as an alcoholic, and suffer the consequences of such a determination, or it must breach the confidentiality of its clients, an action which is emphatically prohibited both by professional conduct rules and Indiana statutory law. Forcing Kightlinger to adopt one of these two options would quite clearly result in immediate and irreparable harm to the firm.

Kightlinger also asserts, in conformity with I.C. 4–21.5–5–2(c), that there would be no adequate remedy at law to compensate it for any damages incurred as a result of the compelled opening of its files or its inability to present a defense to the discrimination claim. This point is well taken. Breaching the confidentiality of its clients could be tantamount to professional suicide. No monetary award could restore the firm's respectability or preserve the professional licenses of the partners. Silence in the face of the discrimination allegation would potentially leave Kightlinger without any legal recourse. For the foregoing reasons, it is clear that Kightlinger has met the statutory burden to receive judicial review of a non-final agency action. It has amply demonstrated irreparable and immediate harm and an inadequate remedy at law.

## II. PARTNERSHIP

■ The second issue raised is whether the trial court erred in determining that the relationship between partners was not one of employment.

The trial court granted both summary and declaratory judgment for Kightlinger, ruling as a matter of law that the ICRC did not have subject matter jurisdiction over Lawlis' complaint. The basis for the ruling was its holding that a partnership relationship was not that of employer/employee and therefore not "relating to employment" in the sense used in our civil rights statute.

I.C. 22–9–1–3(*l*) provides that every "discriminatory practice relating to the acquisition or sale of real estate, education, public accommodations, employment ... shall be considered unlawful."

I.C. 22–9–1–3(h) defines "employer" in part as "any person employing six (6) or more persons within the state."

I.C. 22–9–1–3(i) defines "employee" as "any person employed by another for wages or salary."

"Employment" is not defined in the Indiana Civil Rights Law.

I.C. 23–4–1–6(1) of the Uniform Partnership Act defines a partnership as "an association of two (2) or more persons to carry on as co-owners a business for profit."

Kightlinger is an "employer" under the statute, because it admittedly employs more than six people. The support staff and associate attorneys employed by the firm receive wages or salary. However, Lawlis was not an "employee" as defined by the statute because he did not receive wages or salary. Instead he received a portion of the profits, as did the other partners. Thus, the question remaining is whether the relationship between Lawlis, as a partner, and Kightlinger, as the rest of the partners, is an "employment relationship."

■ Lawlis urges that any relationship that resembles employment is covered by the Indiana Civil Rights Law. He argues in the alternative that his work load and status were altered, making him less than a partner. While "employment" is not defined in the statute, it is significant that "employer" and "employee" are defined. The meaning of "employment" must be derived from its common association with those two terms. An example of the use of "employment" appears later in the statute.

> The prohibition against discrimination in employment because of handicap does not apply to failure of an employer to employ or to retain as an employee any person who because of a handicap is physically or otherwise unable to efficiently and safely perform, at the standards set by the employer, the duties required in that job.

I.C. 22–9–1–13(a).

In the case before us, the parties are entities with equal status. There is no employer/employee relationship among the partners.

In *Hishon v. King & Spaulding* (1984), 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59, the United States Supreme Court analyzed a dispute between an associate attorney and a partnership. While the case was brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.* and therefore not of precedential value here, the analysis is helpful given the similarity in fact situations. *Hishon* involved a claim by an associate attorney at a law firm that she was passed over for partnership on the basis of her sex. The Court found that Title VII applied to her complaint despite the fact that her *employment would end* should she become a partner. In reaching that conclusion, the Court reasoned that:

> It is also of no consequence that employment as an associate necessarily ends when an associate becomes a partner. A benefit need not accrue before a person's employment is completed to be a term, condition, or privilege of that employment relationship.

467 U.S. at 77, 104 S.Ct. at 2234.

Justice Powell's concurring opinion is more directly on point:

> I write to make clear my understanding that the Court's opinion should not be read as extending Title VII to the

management of a law firm by its partners. The reasoning of the Court's opinion does not require that the relationship among partners be characterized as an "employment" relationship to which Title VII would apply. The relationship among law partners differs markedly from that between employer and employee—including that between the partnership and its associates. The judgmental and sensitive decisions that must be made among the partners embrace a wide range of subjects. The essence of the law partnership is the common conduct of a shared enterprise. The relationship among law partners contemplates that decisions important to the partnership normally will be made by common agreement ... or consent among the partners.

*Id.* at 79–80, 104 S.Ct. at 2236 (Powell, J., concurring) (footnotes omitted).

The partnership agreement between the partners of Kightlinger provides that a partner may be involuntarily expelled by a vote of two-thirds of the senior partners. Lawlis signed this agreement and enjoyed the benefits of the arrangement. He argues that he was relegated to a status of "less than a partner" due to his alcoholism. However, he has not shown that any of his partnership benefits were removed. He retained his vote and therefore had an equal say in all partnership decisions. Indeed, he voted in the matter of his own expulsion. The partnership was an arrangement among equals and could have been dissolved at any time. The arrangement between Lawlis and Kightlinger was clearly not an employment relationship and therefore was not subject to a discrimination claim. The trial court's grant of a declaratory judgment is affirmed.

AFFIRMED.

SHIELDS, P.J. and SHARPNACK, J., concur.