FILED

Apr 30 2020, 6:57 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

Ryan Sullivan
Andrew Dutkanych, III
Biesecker Dutkanych & Macer, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| John Crouch,<br>*Appellant-Plaintiff*,<br><br>v.<br><br>State of Indiana,<br>Britni Saunders,<br>*Appellees-Defendants*. | April 30, 2020<br><br>Court of Appeals Case No.<br>19A-CT-1910<br><br>Appeal from the Marion Superior<br>Court<br><br>The Honorable Marc Rothenberg,<br>Judge<br><br>Trial Court Cause No.<br>49D07-1812-CT-48249 |

**Brown, Judge.**

[1] John Crouch appeals the dismissal of his complaint. We affirm.

## Facts and Procedural History

[2] On December 5, 2018, Crouch filed a complaint and demand for jury trial against the State of Indiana and Britni Saunders, the State Personnel Director, in her official capacity and her individual capacity. According to the complaint, on or about June 5, 2001, Crouch was "employed by the Defendant in the Attorney General's office" as a senior compliant analyst, which was a non-attorney position, and Defendant terminated Crouch's employment on or about March 25, 2003.[1] Appellant's Appendix Volume II at 8. Crouch alleged that he applied for positions with the Indiana Department of Correction ("DOC") and the Indiana Bureau of Motor Vehicles ("BMV") in 2018 but was not selected and subsequently learned that the State Personnel Department had identified him as not eligible for rehire and "Defendant did not provide any notice to Crouch that he was being designated as [not eligible for rehire] in its Peoplesoft database." *Id.* at 9. The complaint alleged Count I, violations of the Fourteenth Amendment; and Count II, blacklisting as a violation of Ind. Code §§ 22-5-3-1(a) and 22-5-3-2. Crouch requested the court: require the State to remove his name from any list, database, or program that lists him as not eligible for rehire, enjoin the State from categorizing him or any other employee as not eligible for rehire without first providing notice and an opportunity to be

---

[1] Crouch's complaint does not define "Defendant" or specify if he is referring to the State or to Saunders.

heard, require Saunders in her individual capacity to pay damages to Crouch, and require the State to pay penal damages for its violation of Ind. Code § 22-5-3-1(a).

[3]     On February 6, 2019, the Defendants filed a motion to dismiss pursuant to Ind. Trial Rule 12(B)(6) and a memorandum of law. The Defendants argued Crouch did not have a liberty interest in being rehired by the State and that Ind. Code §§ 22-5-3-1 and 22-5-3-2 did not apply to his claim. Crouch filed a response, and the Defendants filed a reply. In June 2019, the court held a hearing on the motion to dismiss,[2] and on July 19, 2019, granted the motion and ordered the cause dismissed with prejudice.

### *Discussion*

[4]     A motion to dismiss pursuant to Ind. Trial Rule 12(B)(6) tests the legal sufficiency of the complaint. *Price v. Ind. Dep't of Child Servs.*, 80 N.E.3d 170, 173 (Ind. 2017). The rule requires that we accept as true the facts alleged in the complaint. *Id.* We review 12(B)(6) motions de novo and will affirm a dismissal if the allegations are incapable of supporting relief under any set of circumstances. *Id.* We will also affirm a dismissal if the decision is sustainable on any basis in the record. *Id.*

---

[2] The record does not contain a transcript of this hearing.

A. *Fourteenth Amendment*

Crouch argues that the State and Saunders deprived him of his occupational liberty interest by categorizing him as not eligible for rehire without notice and an opportunity to be heard in violation of the Fourteenth Amendment. He asserts that the Defendants created a stigma that foreclosed other job opportunities by coding him as not eligible for rehire.

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C.A. § 1983.

Section 1983 creates no substantive right of its own, but acts only as a vehicle to afford litigants a civil remedy for deprivation of their federal rights. *Myers v. Coats*, 966 N.E.2d 652, 657 (Ind. Ct. App. 2012) (citing *Albright v. Oliver*, 510 U.S. 266, 271, 114 S. Ct. 807 (1994), *reh'g denied*). To prevail on a Section 1983 claim, "the plaintiff must show that (1) the defendant deprived the plaintiff of a

right secured by the Constitution and laws of the United States, and (2) the defendant acted under the color of state law." *Id.* (citing *J.H. ex rel. Higgin v. Johnson*, 346 F.3d 788, 791 (7th Cir. 2003), *reh'g and reh'g en banc denied*, *cert. denied*, 541 U.S. 975, 124 S. Ct. 1891 (2004)). The Fourteenth Amendment of the United States Constitution prohibits any state from depriving a person of life, liberty, or property without due process of law.

[8] Whether a governmental entity is amenable to suit under Section 1983 depends on the meaning of the term "person." "The U.S. Supreme Court has held that for § 1983 purposes that term does not include a state or its administrative agencies." *J.A.W. v. State, Marion Cty. Dep't of Pub. Welfare*, 687 N.E.2d 1202, 1203 (Ind. 1997) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 109 S. Ct. 2304 (1989)). *See also Cantrell v. Morris*, 849 N.E.2d 488, 506 n.26 (Ind. 2006) ("Section 1983 permits recovery against individual officers and units of local government, but not against the State itself"). Thus, we affirm the court's dismissal of Crouch's complaint against the State.

[9] As to the dismissal of Crouch's claim against Saunders in her official capacity, we note that "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Will*, 491 U.S. at 71, 109 S. Ct. at 2312 (citing *Kentucky v. Graham*, 473 U.S. 159, 167, n.14, 105 S. Ct. 3099, 3106, n.14; *Ex parte Young*, 209 U.S. 123, 159-160, 28 S. Ct. 441, 453-454 (1908)). *See also Chang v. Purdue Univ.*, 985 N.E.2d 35, 49 (Ind. Ct. App. 2013) ("[I]t is well settled that a state official may be sued in his or her

official capacity for prospective relief such as an injunction for a violation of a person's due process rights under § 1983."), *reh'g denied*, *trans. denied*.

[10] Crouch's complaint requested the trial court to "[e]njoin the State from categorizing [him] or any other employee as not eligible for rehire without first providing that individual with notice and an opportunity to be heard." Appellant's Appendix Volume II at 11. However, Crouch did not request injunctive relief or other prospective relief as to Saunders in her official capacity. Accordingly, we affirm the court's dismissal of Crouch's claim against Saunders in her official capacity.

[11] As to the dismissal of Crouch's claim against Saunders in her individual capacity, we note "a state official may be sued in his or her individual capacity for retrospective relief under § 1983." *Chang*, 985 N.E.2d at 49. Crouch requested that the trial court require Saunders in her individual capacity to pay damages for "[a]ll wages, benefits, compensation, and other monetary loss suffered as a result of Defendant's unlawful actions," "[c]ompensation for any and all other damages suffered as a consequence of Defendants' unlawful actions," and punitive damages. Appellant's Appendix Volume II at 11.

[12] "In addressing a claim of an unconstitutional denial of procedural due process, we undertake a two step analysis." *Larry v. Lawler*, 605 F.2d 954, 957 (7th Cir. 1978). Initially, we must determine whether Crouch's interest rises to the level of a constitutionally protected liberty or property interest. *See id.* If there is a recognizable property or liberty interest at stake, then we must weigh the

competing interests of the individual and the Government in order to reach a resolution of what process is due. *Id.*

[13] Crouch asserts only that his interest constituted a protected liberty interest. The United States Supreme Court has held:

> While this court has not attempted to define with exactness the liberty . . . guaranteed (by the Fourteenth Amendment), the term has received much consideration and some of the included things have been definitely stated. Without doubt, it denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized . . . as essential to the orderly pursuit of happiness by free men.

*Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 572, 92 S. Ct. 2701, 2706-2707 (quoting *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S. Ct. 625, 626 (1972)).

[14] In *Larry*, the Seventh Circuit discussed *Roth* and held:

> The court suggested a two-pronged liberty interest. Initially, liberty may be implicated if charges are leveled against an employee which "might seriously damage his standing and associations in his community," and the court gives as an example accusations of dishonesty or immorality. [*Roth*, 408 U.S.] at 573, 92 S. Ct. at 2707. . . .
>
> Secondly, the court explained that liberty may also be abridged if "the State, in declining to re-employ the respondent, imposed on him a Stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities. . . ."

605 F.2d at 957. "A plaintiff may prove a deprivation of a liberty interest by showing damage to her 'good name, reputation, honor, or integrity[.]'" *Omosegbon v. Wells*, 335 F.3d 668, 675 (7th Cir. 2003) (quoting *Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S. Ct. 507 (1971)).

[15] In order to determine the specific dictates of due process in a given situation, it is necessary to balance three distinct factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, along with the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail. *Mitchell v. State*, 659 N.E.2d 112, 114 (Ind. 1995) (citing *Wilson v. Bd. of Ind. Employment Sec. Div.*, 270 Ind. 302, 309-310, 385 N.E.2d 438, 444 (1979) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 903 (1976)), *cert. denied*, 444 U.S. 874, 100 S. Ct. 155 (1979)).

[16] The Seventh Circuit has held:

> A claim that a government employer has infringed an employee's liberty to pursue the occupation of his or her choice requires that (1) the employee be stigmatized by the employer's actions; (2) the stigmatizing information be publicly disclosed; and (3) the employee suffer a tangible loss of other employment opportunities as a result of the public disclosure. However, simply labeling an employee as being incompetent or otherwise unable to meet an employer's expectations does not infringe the employee's liberty. The employee's good name, reputation, honor, or integrity must be called into question in such a way as

> to make it virtually impossible for the employee to find new employment in his chosen field.

*Head v. Chicago Sch. Reform Bd. of Trustees*, 225 F.3d 794, 801 (7th Cir. 2000).

[17]    Crouch's complaint alleged that he "has broad liberty interests protected by the Constitution of the United States, including, but not limited to, the right to contract, to engage in any of the common occupations of life, and to his good name, reputation, honor and integrity." Appellant's Appendix Volume II at 9. The complaint does not assert that the designation in the State's Peoplesoft database was ever made public. Further, Crouch has not alleged that the DOC or BMV requested his personnel file, or that Saunders released his personnel file. Crouch also does not allege the designation was erroneous or based on false charges or specify a chosen field of employment. Under the circumstances, we cannot say that reversal is warranted. *See Omosegbon*, 335 F.3d at 675 (observing the district court rejected the plaintiff's claim of deprivation of a liberty interest because there was no evidence that any statements regarding the plaintiff's teaching ability were ever made public, noting a denial of tenure or employment is only stigmatizing if it is accompanied by a publicly announced reason that impugns the employee's moral character or implies dishonesty or other job-related moral turpitude, and holding the plaintiff "had to show that the news of his denial of re-appointment

was both publicly disseminated and also sullied his moral character" and failed to establish a liberty interest).[3]

B. *Blacklisting*

[18] Crouch argues the trial court erred with respect to his claims under Ind. Code §§ 22-5-3-1 and 22-5-3-2. Ind. Code § 22-5-3-1 is titled "Disclosure of information after employee's discharge" and provides:

> (a) A person who, after having discharged any employee from his service, prevents the discharged employee from obtaining employment with any other person commits a Class C infraction and is liable in penal damages to the discharged employee to be recovered by civil action; but this subsection does not prohibit a person from informing, in writing, any other person to whom the discharged employee has applied for employment a truthful statement of the reasons for the discharge.
>
> (b) An employer that discloses information about a current or former employee is immune from civil liability for the disclosure and the consequences proximately caused by the disclosure, unless it is proven by a preponderance of the evidence that the information disclosed was known to be false at the time the disclosure was made.
>
> (c) Upon written request by the prospective employee, the prospective employer will provide copies of any written

---

[3] To the extent Crouch relies upon *Larry*, 605 F.2d 954, we find the case distinguishable. As for the private interest that will be affected by the official action, unlike in *Larry* in which the court observed that the ineligibility rating charged Larry with "abusive treatment of [his] colleagues and associates" and labeled him an "habitual and excessive user of intoxicants," 605 F.2d at 959, Crouch does not assert that any basis was identified for his designation. With respect to the risk of an erroneous deprivation of such interest through the procedures used, unlike in *Larry* in which Larry questioned the reliability or veracity of the source of the information used as a basis for the Commission's decision, *see id.* at 960, Crouch's complaint does not assert that he was wrongfully classified.

communications from current or former employers that may affect the employee's possibility of employment with the prospective employer. The request must be received by the prospective employer not later than thirty (30) days after the application for employment is made to the prospective employer.

[19] Ind. Code § 22-5-3-2 is titled "Railroads; damages; exemplary damages" and provides:

> If any railway company or any other company, partnership, limited liability company, or corporation in this state shall authorize, allow or permit any of its or their agents to black-list any discharged employees, or attempt by words or writing, or any other means whatever, to prevent such discharged employee, or any employee who may have voluntarily left said company's service, from obtaining employment with any other person, or company, said company shall be liable to such employee in such sum as will fully compensate him, to which may be added exemplary damages.

[20] The Indiana Supreme Court has held: "Although this Court has abrogated common-law sovereign immunity almost entirely for tort claims, we have not done so for non-tort claims based on a statute." *Esserman v. Ind. Dep't of Envtl. Mgmt.*, 84 N.E.3d 1185, 1188 (Ind. 2017). "[W]e should not conclude lightly that our legislature has waived State immunity." *Id.* at 1192. "We will thus find a waiver of sovereign immunity only when the statute at issue contains an unequivocal affirmative statement that clearly evinces the legislature's intention to subject the State to suit for the specific statutory claim asserted." *Id.*

[21] Ind. Code § 22-5-3-2 mentions "railway company or any other company, partnership, limited liability company, or corporation," and does not specify the State. We cannot say that this statute clearly evinces or unequivocally expresses the legislature's intention to waive the State's sovereign immunity under these circumstances. *See Esserman*, 84 N.E.3d at 1192 (observing that Indiana's False Claims and Whistleblower Protection Act, while clearly stating that an employee may sue her employer, does not name the State (or one of its agencies or officials) as a permissible whistleblower defendant, noting that "[h]ad the legislature intended to subject the State to whistleblower liability, it could have expressed that intention any number of ways," and concluding that the legislature did not "clearly evince" or "unequivocally express" its intention to waive State immunity for whistleblower claims).[4]

[22] Even assuming the legislature expressed such an intent or that the State or Saunders qualifies as a "person" under Ind. Code § 22-5-3-1, we note that we harmonize statutes when possible, and Title 4 of the Indiana Code governs State Offices and Administration, and Ind. Code § 4-15-2.2.-30 provides that "[a]n application for employment may be rejected if the department determines that the applicant . . . has been dismissed from the public service . . . ." Further,

---

[4] We note that the Indiana Supreme Court has held: "Indiana's Blacklisting Statute, as is readily apparent from its language, was enacted with a particular eye toward the conduct of railroad companies, though it operates to control the conduct of *all* employers." *Loparex, LLC v. MPI Release Techs., LLC*, 964 N.E.2d 806, 811 (Ind. 2012) (citing Ind. Code § 22-5-3-2). However, the Court did not hold the State waived its sovereign immunity with respect to the Blacklisting Statute, and we follow *Esserman*, which is the Indiana Supreme Court's recent decision specifically addressing State immunity under a statute.

subsection (b) of Ind. Code § 22-5-3-1 provides that "[a]n employer that discloses information about a current or former employee is immune from civil liability for the disclosure and the consequences proximately caused by the disclosure, unless it is proven by a preponderance of the evidence that the information disclosed was known to be false at the time the disclosure was made." As noted, Crouch makes no assertion that the designation was erroneous or based on false charges, and we cannot say reversal is warranted. *See Brazauskas v. Fort Wayne-S. Bend Diocese, Inc.*, 796 N.E.2d 286, 291 (Ind. 2003) (holding that plaintiff "does not claim that any of the alleged disclosures that led to her denial of the PCL position were false" and that "[s]he would therefore have no claim for blacklisting under the revised statute"), *cert. denied*, 541 U.S. 902, 124 S. Ct. 1602 (2004).

[23] For the foregoing reasons, we affirm the court's dismissal of Crouch's complaint.

Affirmed.

Najam, J., and Kirsch, J., concur.